OSCAR LUGO,                              : UNITED STATES DISTRICT COURT
        Petitioner

    VS.

SUPERINTENDENT                          : EASTERN DISTRICT OF PENNSYLVANIA
COAL TOWNSHIP, et al.,

      AND

THE DISTRICT ATTORNEY OF                : CIVIL ACTION
CHESTER COUNTY,
        Respondents


                            : NO. 20-2281


## ANSWER OF THE DISTRICT ATTORNEY OF CHESTER COUNTY TO PETITION FOR WRIT OF HABEAS CORPUS


## I.     STANDARD OF REVIEW

Under AEDPA, a federal court may not grant habeas relief on any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  Under the "contrary to" clause of § 2254(d)(1), relief may only be ordered if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a

case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389, 430 (2000).   Under the "unreasonable application" clause of § 2254(d)(1), relief may only be ordered if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the case; Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.3d 389, 430 (2000); or was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.  Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113, 2119-2120, 147 L.Ed.2d 125, 135-136 (2000).  "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and … that an unreasonable application is different from an incorrect one. …   [A] federal habeas court may not issue a writ under the unreasonable clause simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914, 926-927 (2002) (citations omitted) (internal quotes omitted).  A federal court must presume that the factual findings of both state trial and appellate courts are correct.  This presumption may be rebutted only by clear and convincing evidence.  Everett v. Beard, 290 F.3d 500, 508 (3d. Cir. 2002).

In Werts v. Vaughn, 228 F.3d 178 (3d Cir. 1999), the United States Court of

Appeal for the Third Circuit stated:

> The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which went into effect on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Since Werts filed his habeas petition on March 18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards set forth in the AEDPA to his claim for federal habeas corpus relief. *See* Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).
>
> Under 28 U.S.C. § 2254(a)(1997), a federal court is required to consider only petitions filed on behalf of individuals in custody pursuant to a state court judgment which are grounded on a violation of the Constitution or the laws or treaties of the United States. Moreover, the petitioner has to overcome the exhaustion hurdle described earlier, 28 U.S.C. § 2254(a)(1997).
>
> The AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. *See* Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal habeas corpus relief is precluded as to any claim that was adjudicated on the merits in a state court proceeding unless such adjudication:
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d)(1) and (2) (1997). Factual issues determined by a state court are presumed to be correct and the

petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)(1997).

On April 18, 2000, the Supreme Court issued a decision in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), in which the Court construed the new standard of review as set forth in amended 2254(d)(1). Justice O'Connor delivered the opinion of the Court wherein she provided the following interpretation with respect to the standard of review:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523. The appropriate inquiry to be made under the "unreasonable application of" standard, the Court stated, was "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. In further delineating the "unreasonable application of" component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable. Id. at 1522.

4

A little over one year before the Supreme Court's decision in Williams, we also construed the new standard of review under section 2254(d)(1) in Matteo v. Superintendent, SCI Albion, 171 F.3d 877 (3d Cir. 1999), sitting *en banc*.  There we held that section 2254(d)(1) requires a federal habeas court to make two inquiries:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim.  Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien v. Dubois, 145 F.3d 16, 24-25(1st Cir. 1998).  In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified.  If so, then the petition should be granted.

Matteo, 171 F.3d at 891.  We believe our opinion in Matteo is in accord with the Supreme Court's decision in Williams. Indeed, one of the focuses of Justice O'Connor's opinion was the fact that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. Williams, 120 S.Ct. at 1519.  Our opinion in Matteo also makes this distinction.

To commence our analysis of the "contrary to" provision, we must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim.  Matteo, 171 F.3d at 888.  We explained that to prove entitlement to habeas relief under the "contrary to" provision:

> it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's;  rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.  This standard precludes granting

habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent.

Id. If we determine that the state court decision is not "contrary to" the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis -- whether the state court decision was based on an "unreasonable application of" Supreme Court precedent. Id. In analyzing the "unreasonable application of" provision, we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices. Id. (quoting O'Brien, 145 F.3d at 25) (other citations omitted). A contrary holding would amount to de novo review which we have held is proscribed by the AEDPA. Id. Thus, the appropriate inquiry at this juncture is whether the state court's application of Supreme Court precedent was objectively unreasonable. Williams, 120 S.Ct. at 1521; Matteo, 171 F.3d at 889-890. In other words, "the federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Matteo, 171 F.3d at 890.

Werts at 195-197 (footnotes omitted).

A federal habeas corpus petitioner must show that the federal claim he asserts in federal court has been fairly presented to the state courts. It is not enough for the petitioner to show that he has presented the facts on which the federal claim is based to the state courts. The argument raised in federal court must be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts. Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865

(1995); <u>Ross v. Petsock</u>, 868 F.2d 639 (3d. Cir. 1989).   The purpose of the exhaustion doctrine is to allow the state courts the "initial opportunity to pass upon and correct" alleged constitutional errors.  <u>Picard v. Connor</u>, 404 U.S. 275 (1971), *citing* <u>Wilwording v. Swenson</u>, 404 U.S. 249, 250 (1971).

## II.     **PROCEDURAL HISTORY & FACTUAL BACKGROUND**

### A.     **Factual Background.**

Beginning in 2003, Pennsylvania State Troopers Kelly Cruz and Alan Lohman began an investigation into the organized distribution of large quantities of cocaine in Chester County, Pennsylvania, and the surrounding area.  (N.T. 07/30/07, 36).   Troopers Cruz and Lohman had received information that organized cocaine distribution was taking place in West Chester Borough, Chester County.  (N.T. 07/30/07, 37).   Armed with that information, Troopers Cruz and Lohman employed a confidential informant, Christina Oliveras, to purchase cocaine from that location.   (N.T. 07/30/07, 39).   For over a year, Oliveras purchased varying amounts of cocaine from Antonio Aviles and Jose Lito Diaz-Perez, two low level dealers.  (N.T. 07/30/07, 40-41).

Also during the first year of the investigation, judicial warrants authorizing the interception and recording of telephone conversations among certain members of this organization were obtained.  (N.T. 07/30/07, 46).   Over time, visual and

electronic surveillance revealed the players in this criminal enterprise:   Tony "Felix" Reyes, Luis Colon, Angel "Cono" Colon, Nelson Lugo, and at the top of the "pyramid," Petitioner Oscar Lugo.  (N.T. 07/30/07, 45).  On the intercepted calls, Petitioner was recorded numerous times giving orders for the purchase, distribution and sale of vast quantities of cocaine, and for the handling of money associated therewith.  At the bottom of the pyramid was Petitioner's Mexican supplier, Ramiro Barrios, who delivered large shipments of cocaine to Petitioner twice a week over a period of several years.  (N.T. 08/01/07, 199-208).

The shipments of cocaine were delivered to New Image Auto, a storefront in Kennett Square, PA, rented by Petitioner.   (N.T. 08/01/07, 94).   There was testimony indicating that no automotive work was done in the shop.   (N.T. 08/01/07, 95).  Testimony further revealed that none of the men implicated as being at the top of the drug organization had any other means of income in the years the organization was operating, other than selling drugs.  (N.T. 08/01/07, 80-83).  Finally, the evidence demonstrated that in addition to renting the store front, and paying for the cocaine that was delivered there, Petitioner paid to have this building equipped with high tech surveillance cameras and alarms to alert the group to any police activity in the vicinity.  (N.T. 08/01/07, 106-107).

The system was simple:  An SUV driven by Barrios' men would back into the garage and the door would be shut.  Four men including Nelson Lugo, Angel

"Cono" Colon, Luis Colon, and Petitioner, Oscar Lugo, would unload the SUV, placing the cocaine in a small office in the shop.  The quantity of cocaine ordered by Petitioner and subsequently delivered was most often fifty (50) kilograms wrapped in individual kilograms in brick form.  Then a white Crown Victoria belonging to Barrios would enter the garage, and be loaded with money by the same four individuals.  The money that was placed in the trunk of the Crown Victoria was typically counted and banded at Petitioner's house the day before each delivery.  (N.T. 08/01/07, 100-106).  The payment to the Mexican supplier was not, however, always for the shipment of cocaine that was delivered that day. The groups took part in "fronting", or delivering the product, "on credit", and receiving payment after that particular cocaine had been sold.   Under these circumstances, it was Petitioner, Oscar Lugo who was responsible for paying the debt to his Mexican supplier.  (N.T. 08/01/07, 110-111).

These deliveries occurred on a bi-weekly basis for a period of several years, and when a delivery had been completed, the cocaine would be split up among the dealers, with Petitioner often keeping half the shipment for himself.  Petitioner himself would then decide how much of the remainder would be given to each of the other major dealers, with typical amounts being:   ten (10) to thirty (30) kilograms of cocaine to Angel Colon to distribute in Camden, New Jersey; and five (5) to ten (10) kilograms of cocaine to Nelson Lugo to take into Delaware; three

(3) to five (5) kilograms to Luis Colon to sell in Philadelphia.  (N.T. 08/01/07, 108-110).  Luis Colon in turn sold drugs to approximately five (5) different buyers in Philadelphia including a man named "Flacco."  (N.T. 08/01/07, 90-92, 108-110, 122, 126-28, 154).

Luis Colon also collected money owed to Petitioner from other dealers and buyers, which he would then deliver to Petitioner.  (N.T. 08/01/07, 122).  Luis Colon testified that he collected money for Petitioner about ten (10) to twenty (20) times a month and sold cocaine for Petitioner about six (6) to seven (7) times. (N.T. 08/01/07, 125-128).  The amounts of money he collecting varied, but were generally in the following vicinity:   $40,000 or $50,000 from Nelson Lugo; $10,000 to $40,000 from Tony Reyes; and $40,000 to $50,000 from Angel "Cono" Colon.  (N.T. 08/01/07, 128).

It was in this capacity that Luis Colon, along with Angel Colon, went to pick up money from Tony Reyes on March 9, 2004.  (N.T. 08/01/07, 129).  On that date, Petitioner called Luis Colon and instructed him to go with Angel Colon and retrieve a $40,000 payment for cocaine from Tony Reyes.  Angel Colon picked up Luis Colon at his home in Philadelphia and drove to Tony Reyes' home in West Chester where they received the $40,000 payment.  (N.T. 08/01/07, 130).  On the way back to Philadelphia, State Police Troopers Kevin Jaszemski and Kelly Cruz pulled the men over on Route 95.  (N.T. 08/01/07, 133-134).  After issuing the

driver with a warning for speeding, police requested, and received permission to search the vehicle.  (N.T. 08/01/07, 180).  Trooper Jaszemski found a plastic bag behind the seat of the truck which contained $40,000 in U.S. currency.  (N.T. 08/01/07, 181-182).

Shortly after seizing the $40,000, the State Police checked the currency seized against the marked currency previously used by the confidential informant, Christina Oliveras, to make a controlled purchase of cocaine at 340 West Washington Street at the outset of the investigation.  (N.T. 08/01/07, 197-199). The State Police found that $4,100 of $5,000 that had been previously used by Christina Oliveras to purchase cocaine at 340 West Washington Street was contained in the $40,000 seized by Trooper Jaszemski from the truck of Angel Colon and Luis Colon; money that was clearly intended for delivery to Petitioner. (N.T. 08/01/07, 198).  Immediately after the seizure of the $40,000 by the State Police, Luis Colon called Petitioner to tell him that the money had been confiscated.  (N.T. 08/01/07, 137).

Subsequent to the seizure of the $40,000, several arrests were made of key players in the Lugo Organization.  Tony Reyes and Luis Colon, both of whom testified against Petitioner at trial, were arrested in connection with the $40,000 seizure.  On March 22, 2004, Petitioner was arrested at the Newark Airport by Delaware Authorities on unrelated charges.

**B.**   **Procedural History.**

On April 21, 2004, a Criminal Complaint was filed against Petitioner in Chester County [CP-15-CR-0002037-2004], by Troopers Lohman and Cruz charging him with:   One (1) count Corrupt Organizations [18 Pa.C.S.A. § 911(b)(1)], and one (1) count of Dealing in Unlawful Proceeds [18 Pa C.S.A. § 5111(a)(1)].   On April 21, 2004, a second Criminal Complaint [CP-15-CR-0002037-2004], was filed against Petitioner by Troopers Lohman and Cruz charging him with:  ninety-three (93) counts of Possession With Intent to Deliver [35 P.S. § 780-113 (a)(30)]; Criminal Conspiracy [18 Pa.C.S.A. § 901] and related charges.  These two cases were consolidated for trial.

On August 2, 2007, following a jury trial, before the Honorable James P. MacElree, II, Petitioner was convicted of all charges.  On August 30, 2007, Judge MacElree sentenced Petitioner on ninety-three (93) counts of Possession With Intent to Deliver {sixty-three (63) "actual deliveries;" thirty (30) "possessions with intent to deliver"}; one (1) count of Criminal Conspiracy; one (1) count of  Corrupt Organizations; and one (1) count of Dealing in Proceeds of Unlawful Activities. Petitioner's total sentence was 152 to 440 years imprisonment.

On September 7, 2007, Petitioner appealed the judgment of sentence. Petitioner was represented at trial and sentencing by Joseph C. Santaguida, Esquire.  On September 14, 2007, Attorney Santaguida filed a petition to withdraw

as counsel.   On September 24, 2007, Judge MacElree denied the petition to withdraw as counsel.   Attorney Santaguida filed the direct appeal on behalf of Petitioner, which was docketed at 2215 EDA 2007 and 2216 EDA 2007.   Attorney Santaguida subsequently filed, with the Superior Court, a petition to withdraw his appearance and have counsel appointed for Petitioner.   On October 2, 2007, the Superior Court granted Attorney Santaguida's petition to withdraw and remanded the case to Judge MacElree to determine whether Petitioner was eligible for count appointed counsel.

Scott Godshall, Esquire, was appointed to represent Petitioner.   On October 24, 2007, Attorney Godshall was ordered to file Concise Statement of Matters Complained of on Appeal.   On November 15, 2007, Attorney Godshall filed the Concise Statement.   On December 13, 2007, Judge MacElree filed his Opinion written pursuant to Pa.R.A.P. 1925.

On February 28, 2008, Justin McShane, Esquire, entered his appearance on behalf of Petitioner.   On March 25, 2008, Attorney McShane filed a petition seeking leave to file a Supplemental Concise Statement.   On April 21, 2008, the petition seeking leave to file a Supplemental Concise Statement was granted.   On May 12, 2008, Attorney McShane filed a Supplemental Concise Statement.   On June 27, 2008, Judge MacElree filed a Supplemental 1925 Opinion.

On March 16, 2009, the Superior Court affirmed the judgment of sentence.

13

Commonwealth v. Oscar Lugo, 2215 EDA 2007, 972 A.2d 556 (Pa. Super. 2009).

On direct appeal, Petitioner raised four issues:

> This timely appeal followed, in which Lugo raises the following issues for our review:
>
> > I.   Whether the evidence adduced at trial was insufficient as a matter of law to sustain a conviction under 35 P.S. § 780-113(A)(30)?
> >
> > II.  Whether the evidence adduced at trial was insufficient as a matter of law to sustain a conviction under 18 Pa.C.S. § 911(b)?
> >
> > III. Whether the judgment of sentence imposed should be vacated since it is unduly harsh and excessive under the circumstances of this case?
> >
> > IV. Whether the charges should be dismissed, as the Commonwealth failed to bring Lugo to trial pursuant to the statutory limitation under Article III of the IAD, 42Pa.C.S. § 9101, thereby denying Lugo his right to a speedy trial under the agreement?
>
> Appellant's Brief at 6.

Commonwealth v. Oscar Lugo, 2215 EDA 2007, 4-5.

The Superior Court found that there was more than sufficient evidence to sustain Petitioner's convictions.  See Commonwealth v. Oscar Lugo, 2215 EDA 2007, 5-18.  Petitioner's discretionary sentencing issue was found waived for the failure to object at sentencing or file a post-sentence motion.  See Commonwealth v. Oscar Lugo, 2215 EDA 2007, 18-19.  Petitioner's issue that the charges should have been dismissed pursuant to Article III of the Interstate Agreement on

Detainers was also waived as Petitioner's Supplemental Pa.R.A.P. 1925 Statement asserted that the charges should have been dismissed pursuant to Article IV of the Interstate Agreement on Detainers.  *See* <u>Commonwealth v. Oscar Lugo</u>, 2215 EDA 2007, 19-20.

On April 27, 2009, Petitioner filed a Petition seeking to file a Petition for Allowance of Appeal *Nunc Pro Tunc*.  On July 15, 2009, Petitioner was granted permission by the Supreme Court to file a Petition for Allowance of Appeal *Nunc Pro Tunc*.  <u>Commonwealth v. Oscar Lugo</u>, 61 MM 2009.  On July 29, 2009, Petitioner filed a Petition for Allowance of Appeal.  On December 16, 2009, the Supreme Court denied the Petition for Allowance of Appeal.  <u>Commonwealth v. Oscar Lugo</u>, 522 MAL 2009, 604 Pa. 695, 986 A.2d 149 (2009).

On March 16, 2011, through counsel Attorney McShane, Petitioner filed a PCRA petition.  Petitioner's PCRA petition raised the following two claims:

> By failing to file a post-sentence motion arguing (**1**) that the verdict was against the weight of the evidence; and (**2**) that the trial court abused its discretion in sentencing, where counsel abused its discretion in sentencing, where counsel was effectively instructed to do so by the client, the trial attorney was per-se ineffective.

March 16, 2011 PCRA Petition, at 4.

On March 21, 2011, Judge MacElree ordered the Commonwealth to file a Response.  On April 27, 2011, the Commonwealth filed a Response.  On January 17, 2012, Judge MacElree held a PCRA hearing.  On July 2, 2012, Judge MacElree

granted Petitioner permission to file a post-sentence motion *nunc pro tunc*.

On July 12, 2012, Petitioner filed a post-sentence motion *nunc pro tunc*, which only concerned the discretionary aspects of his sentence. On September 24, 2012, Judge MacElree held a hearing on Petitioner's *nunc pro tunc* post-sentence motion. On October 17, 2012, Judge MacElree denied Petitioner's *nunc pro tunc* post-sentence motion. On November 15, 2012, Petitioner appealed the judgment of sentence *nunc pro tunc*, which was docketed at 3162 EDA 2012. In the direct appeal *nunc pro tunc*, Petitioner raised one claim:

> A trial court abuses its discretion when it imposes a manifestly excessive sentence. A sentence is manifestly excessive when it is clearly unreasonable, not guided by sound judgment, and disproportionate to [appellant's] criminal conduct. This sentencing court sentenced [appellant] to 152 to 440 years in prison for non-violent drug offenses amounting to a de facto sentence of life in prison without parole. Did the trial court abuse its discretion?

Commonwealth v. Oscar Lugo, 3162 EDA 2012, at 4 (capitalization removed).

On August 9, 2013, the Superior Court, in the direct appeal *nunc pro tunc*, affirmed the judgment of sentence. Commonwealth v. Oscar Lugo, 3162 EDA 2012, 83 A.3d 1062 (Pa. Super. 2013). The Superior Court stated in part:

> Appellant contends the court's decision to impose consecutive sentences for some of the convictions amounted to a *de facto* life sentence without the possibility of parole. Appellant asserts his aggregate sentence is unreasonable because his crimes did not involve violence. Appellant also argues that other "drug kingpins" have received lesser terms of incarceration for similar offenses. Further, Appellant complains the court failed to

provide a statement of reasons to support the sentence imposed. Appellant concludes this Court must vacate his sentence and remand the matter for re-sentencing.

…

Instantly, Appellant properly preserved his allegation of excessiveness due to imposition of consecutive sentences in a timely post-sentence motion *nunc pro tunc* and included a Rule 2119(f) statement in his appellate brief.  While a substantial question appears to exist on the ground alleged, we must emphasize that the jury found Appellant guilty of ninety-six (96) separate offenses.   These offenses stemmed from Appellant's leadership of a criminal syndicate that regularly trafficked multiple kilos of cocaine through Chester County to supply street-level drug dealers throughout the area.  Further, the court did not impose consecutive sentences on every count. Instead, the court imposed concurrent sentences on seventy-four (74) of the ninety-six (96) counts.  In seeking review of his aggregate sentence, Appellant is not entitled to any further "volume discount" for his multiple offenses.  Based upon the foregoing, we will not deem the aggregate sentence excessive in light of the ample amount of criminal conduct at issue.

Commonwealth v. Oscar Lugo, 3162 EDA 2012, 4, 7-8 (citations omitted).  On

January 21, 2014, the Supreme Court denied the Petition for Allowance of Appeal.

Commonwealth v. Oscar Lugo, 688 MAL 2013, 623 Pa. 761, 83 A.3d 414 (2014).

On March 30, 2015, through current counsel, Cheryl J. Sturm, Petitioner filed a PCRA petition.   On April 13, 2015, Judge MacElree ordered the Commonwealth to file a Response.  On May 27, 2015, the Commonwealth filed a Response.  On June 3, 2015, Petitioner filed a Reply to the Commonwealth's Response.  On December 11, 2015, Judge MacElree issued a Notice of Intent to Dismiss the PCRA petition.  On December 30, 2015, Petitioner filed a Response to

the Notice of Intent to Dismiss the PCRA petition.

On January 21, 2016, upon consideration of Petitioner's Response to the Notice of Intent to Dismiss the PCRA petition, Judge MacElree scheduled a PCRA hearing for Thursday - March 21, 2016.  On January 26, 2016, Judge MacElree issued a revised Order as the January 21, 2016 Order stated that March 21 was Thursday when it was actually Monday.  On March 10, 2016, Petitioner filed a Motion for Recusal of Judge MacElree.  On March 17, 2016, Judge MacElree denied the Motion for Recusal.

On March 21, 2016, Judge MacElree held a PCRA hearing.  Before the PCRA hearing commenced, the Commonwealth brought to the attention of Judge MacElree the Superior Court case of Commonwealth v. Ruiz, 131 A.3d 54 (Pa. Super. 2015), decided December 30, 2015, which held that Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), decided June 17, 2013, by the United States Supreme Court, applied if raised in a timely PCRA petition, where the judgment of sentence was still pending on direct review when Alleyne was decided.  Ruiz at 60.  (N.T. 03/21/16, 3-5).  On this basis Judge MacElree ordered that Petitioner would be resentenced.

On March 24, 2016, Judge MacElree entered the following Order:

> **AND NOW**, this 24th day of March, 2016, upon consideration of Defendant's Petition for Post-Conviction Collateral Relief, the Commonwealth's response thereto, and after a hearing held before the undersigned, it is hereby

**ORDERED** and **DECREED** that, pursuant to Commonwealth v. Ruiz, 2015 WL 9632089 (Pa. Super. Dec. 30, 2015), Defendant's Petition is **GRANTED** in part, and the sentence entered against him on August 30, 2007 is **VACATED**. The remainder of Defendant PCRA Petition, in which he requests that his conviction(s) be vacated, is **DENIED**.[1]

The Court Administrator of Chester County is Directed to schedule this matter for Resentencing.

The Clerk of Courts shall serve a copy of this Order upon (1) the District Attorney; (2) Cheryl J. Sturm, Esquire; and (3) the Defendant by **Certified Mail, Return Receipt Requested**.

_____

[1.]     We find the recantation testimony offered by witness Luis Colon at the hearing of March 21, 2016, not to be credible.

March 24, 2016 Order of the Honorable James P. MacElree, II.

On April 21, 2016, Petitioner appealed Judge MacElree's March 24, 2016 Order, which was docketed at 1247 EDA 2016. In the appeal from the March 24, 2016 Order, Petitioner raised three claims:

I.     Whether the PCRA court abused its discretion when it declined to grant the motion for recusal given that a reasonable person faced with the facts would conclude that there was at least the appearance of bias on the part of the judge?

II.     Whether the PCRA court abused its discretion when it decided not to grant a new trial after the primary prosecution witness testified that he committed perjury at the trial and that the perjury was motivated by threats from the police?

III.     Whether the PCRA court erred when he failed to find ineffective assistance of counsel ("IAC") for failing to file a bill of particulars demanding that the prosecution identify the dates and locations of each cocaine delivery in order to ensure the

> Appellant was not sentenced more than once for the same crime [hereinafter called "multiplicity"].

Commonwealth v. Oscar Lugo, 1247 EDA 2016, at 5, 2017 WL 436490, at *2 (Pa. Super. 2017).

On February 1, 2017, the Superior Court affirmed the March 24, 2016 Order finding that Petitioner's first two claims lacked merit and his third claim waived. Commonwealth v. Oscar Lugo, 1247 EDA 2016, 2017 WL 436490 (Text), 161 A.3d 366 (Table) (Pa. Super. 2017).   Petitioner did not file a Petition for Allowance of Appeal.

On July 25, 2017, Judge MacElree resentenced Petitioner as follows:  ***On Criminal Information Number CP-15-CR-0003873-2004***; **Counts 1 to 20** - 3½ to 10 years on all counts, all consecutive to each other; **Counts 21 to 40** - 3½ to 10 years on all counts, all consecutive to each other, but concurrent with Counts 1 to 20; **Counts 41 to 60** - 3½ to 10 years on all counts, all consecutive to each other, but concurrent with Counts 1 to 20 and Counts 21 to 40; **Counts 61 to 80** - 3½ to 10 years on all counts, all consecutive to each other, but concurrent with Counts 1 to 20, Counts 21 to 40, and Counts 41 to 60; **Counts 81 to 93** - 3½ to 10 years on all counts, all consecutive to each other, but concurrent with Counts 1 to 20, Counts 21 to 40, Counts 41 to 60, and Counts 61 to 80; **Count Charging Criminal Conspiracy** - 10 to 20 years, consecutive to all other counts.

[On Criminal Information Number CP-15-CR-0003873-2004, Petitioner's total sentence was 80 to 220 years.]

On ***Criminal Information Number CP-15-CR-0002037-2004***:   ***Count Charging Corrupt Organizations*** - 2 to 20 years; **Count Charging Dealing in Unlawful Proceeds** - 2 to 20 years.  The two counts on CP-15-CR-0002037-2004 were concurrent with each other and Counts 1 to 20 on CP-15-CR-0003873-2004.

[On Criminal Information Number CP-15-CR-0002037-2004, Petitioner's total sentence was 10 to 20 years.]

The sentence on Criminal Information Number CP-15-CR-0002037-2004 as stated above is after a clarification order was entered on August 1, 2017, by Judge MacElree, after consultation with the parties.

**Petitioner's total sentence was 90 to 240 years, with a RRRI minimum sentence of 75 years.**

On August 1, 2017, Petitioner filed a Post-Sentence Motion to Modify Sentence.  On August 3, 2017, Judge MacElree denied the Post-Sentence Motion. On August 22, 2017, Petitioner filed an appeal from the July 25, 2017 judgment of sentence, which was docketed at 2794 EDA 2017.

In the appeal from the July 25, 2017 judgment of sentence, Petitioner raised three claims:

Lugo raises three issues for our review:

> 1.  Whether the sentence is illegal because it was imposed in violation of the double jeopardy clause of the Fifth Amendment which prohibits multiplicitous informations and multiplicitous sentences?
>
> 2.  Whether the sentence was imposed based on inaccurate information and false assumptions in violation of the due process clause of the fourteenth amendment?
>
> 3.  Whether there is a substantial question as to the appropriateness of the sentence under the sentencing code?
>
> Appellant's Brief at 2.

Commonwealth v. Oscar Lugo, 2794 EDA 2017, at 3-4, 2019 WL 256503, at *2.

On January 18, 2019, the Superior Court affirmed the July 25, 2017 judgment of sentence.  Commonwealth v. Oscar Lugo, 2794 EDA 2017, 2019 WL 256503 (Text), 209 A.3d 514 (Table) (Pa. Super. 2019).  On February 9, 2019, Petitioner filed a Petition for Allowance of Appeal.  On July 11, 2019, the Supreme Court denied the Petition for Allowance of Appeal.  Commonwealth v. Oscar Lugo, 85 MAL 2019, ___ Pa. ___, 216 A.3d 1016 (2019).

On May 15, 2020, Petitioner, with the assistance of counsel, filed a Petition for Writ of Habeas Corpus, which has been assigned to the Honorable Harvey Bartle, III, and referred to United States Magistrate Judge David R. Strawbridge.

The District Attorney of Chester County now files this Answer in response to the Petition for Writ of Habeas Corpus.  The Petition for Writ of Habeas Corpus contains four (4) claims.

### III.   <u>ALLEGED GROUNDS FOR RELIEF</u>

Initially it is important to note that an allegation of a violation of state law does not constitute a violation of the Constitution, laws or treaties of the United States upon which a grant of federal habeas corpus relief may be premised.  28 U.S.C. § 2254(a); <u>Estelle v. Maguire</u>, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d. 385 (1991); <u>Smith v. Zimmerman</u>, 768 F.2d 69 (3d Cir. 1985).  Consequently, to the extent Petitioner is alleging that Pennsylvania courts misapplied Pennsylvania law these alleged grounds for relief are not cognizable under 28 U.S.C. § 2254(a).

Moreover, alleged procedural errors in state post-conviction proceedings do not call into question the validity of the trial or sentencing.  Petitioner cannot claim procedural defects in how Pennsylvania courts handled his PCRA petitions, as there is no constitutional right to state post-conviction proceedings.  *See* 28 U.S.C. § 2254(i), titled, "State custody; remedies in Federal courts", clearly states:  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  "There is no constitutional right to an attorney in state post-conviction proceedings.  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); <u>Murray v. Giarratano</u>, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases); <u>Wainwright v. Torna</u>, 455

U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640, 671 (1991); Werts v. Vaughn, 228 F.3d 178, 189 n.4 (3d Cir. 1999), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).

The Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Pennsylvania Courts are not obligated to follow the decisions of inferior federal court on issues of federal law, and are only obligated to follow decisions of the United States Supreme Court on issues of federal law. *See* Commonwealth v. Cross, 555 Pa. 603, 726 A.2d 333 (1999); Commonwealth v. Ragan, 560 Pa. 106, 743 A.2d 390 (1999); Commonwealth v. Chester, 557 Pa. 358, 733 A.2d 1242 (1999); Commonwealth v. Laird, 555 Pa. 629, 726 A.2d 346 (1999). Moreover, Pennsylvania Courts are not obligated to follow the decisions of any federal court, including the United States Supreme Court, on issues of state law, as "state courts are the principal expositors of state law". *See* Moore v. Sims, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979); Commonwealth v. Lacey, 344 Pa. Super. 576, 582, 496 A.2d 1256, 1260 (1985); Commonwealth v. Franklin, 397 Pa. Super. 265, 274 n.8, 580 A.2d 25, 30 n.8 (1990); Commonwealth v. Parsons, 391

Pa. Super. 273, 281 n.9, 570 A.2d 1328, 1333 n.9 (1990); Dibble v. Sec. of Am.

Life Ins. Co., 404 Pa. Super. 205, 214, 590 A.2d 352, 356 (1991).

In deciding an application for writ of habeas corpus, a determination of a

factual issue by a state court shall be presumed to be correct, and the applicant has

the burden of rebutting the presumption of correctness by clear and convincing

evidence. This presumption also applies to the factual determinations of state trial

and appellate courts. Fahy v. Horn, 516 F.3d 169, 181 (3d Cir. 2008); Duncan v.

Morton, 256 F.3d 189, 196 (3d Cir. 2001). In Lewis v. Horn, 581 F.3d 92 (3d Cir.

2009), the United States Court of Appeal for the Third Circuit stated in part:

> Under AEDPA, factual determinations made by state courts -
> such as the one at issue here-are entitled to deference:
>
> > "[A] determination of a factual issue made by a State court
> > shall be presumed to be correct. The applicant shall have
> > the burden of rebutting the presumption of correctness by
> > clear and convincing evidence."
>
> § 2254(e)(1).**FN12**  This presumption of correctness applies to
> factual determinations of both state trial and appellate courts.
> *See* Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006);
> Duncan, 256 F.3d at 196. Implicit factual findings are entitled
> to § 2254(e)(1)'s presumption of correctness as well. Campbell
> v. Vaughn, 209 F.3d 280, 285-86 (3d Cir.2000). Additionally,
> while § 2254 does not condition deference to state court factual
> findings on whether the state court held a hearing, Fahy, 516
> F.3d at 182, the procedures used in the state court's
> adjudication of a claim may impact whether the petitioner has
> rebutted the presumption of correctness, *see* Lambert, 387 F.3d
> at 239. Thus "state fact-finding procedures may be relevant
> when deciding whether ... a petitioner has adequately rebutted a

fact, but the procedures are not relevant in assessing whether deference applies to those facts." <u>Rolan</u>, 445 F.3d at 679.

---

FN12.　　　Additionally, under § 2254(d)(2), relief cannot be granted on a claim that was adjudicated on the merits in state court proceedings unless the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We have previously explained that "'the language of § 2254(d)(2) and § 2254(e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court proceeding,' while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record.'" <u>Taylor v. Horn</u>, 504 F.3d at 429 (<i>quoting</i> <u>Lambert</u>, 387 F.3d at 235). Here, the District Court did not grant relief to Lewis on the basis that the Pennsylvania Supreme Court's decision resulted in an unreasonable determination of the facts but rather that the decision amounted to an unreasonable application of federal law to the facts of Lewis's case. <i>See</i> <u>Lewis</u>, 2006 WL 2338409, at *11.

<u>Lewis v. Horn</u>, 581 F.3d at 111 (footnote in original).

Defendant raises four (4) claims in the Petition for Writ of Habeas Corpus.

These alleged claims are the following:

## A.　PETITIONER'S CLAIMS WITH RESPECT TO THE SPECIFICITY OF DATES IN THE CRIMINAL INFORMATION ARE MERITLESS AND/OR WAIVED.

Current counsel argues and argued in state court that Petitioner's convictions and sentence are illegal because of the alleged lack of specificity in dates, in the Criminal Information, for the crimes of which Petitioner was convicted, which yielded multiple sentences for allegedly the same crime in violation of the Double Jeopardy Clause, referred to as "multiplicity" by current counsel.  Current counsel also argues and argued in state court that trial counsel was ineffective for not filing a motion to quash the criminal information.

In state court, current counsel raised an ineffectiveness of trial counsel claim.  The Superior Court found that current counsel waived this claim.  On February 1, 2017, the Superior Court affirmed the March 24, 2016 Order, granting Petitioner PCRA petition in part, vacating his sentence, and denying his request for a new trial.  The Superior Court stated in part:

> III.   Whether the PCRA court erred when he failed to find ineffective assistance of counsel ("IAC") for failing to file a bill of particulars demanding that the prosecution identify the dates and locations of each cocaine delivery in order to ensure the Appellant was not sentenced more than once for the same crime hereinafter called "multiplicity".
> …
>
> Third, Appellant claims that he had ineffective assistance of trial counsel.  *See* Appellant's Br. at 22–25.  On appeal, he argues that "trial counsel's performance was deficient for failing to file a motion to quash the indictment or a motion for bill of particulars insisting that the prosecution identify the date, drug quantity and drug identity of each count set forth in the information involving PWID or distribution."  Id. at 24.  According to Appellant, the lack of specificity in dates and

locations for the charges against him yielded multiple sentences for the same crime in violation of the Double Jeopardy Clause. *See* id. at 25.

This claim is waived, as Appellant failed to raise it before the PCRA court.  *See* Pa.R.A.P. 302.  In his petition, Appellant claimed ineffective assistance of counsel on a different ground, suggesting that counsel's failure resulted in an illegal sentence as recognized in Alleyne v. United States, 133 S.Ct. 2151 (2013), and Apprendi v. New Jersey, 530 U.S. 466 (2000).  *See* PCRA Petition at 8–12.  Notably, upon review, the PCRA court granted Appellant relief on this claim, vacating his judgment of sentence and scheduling a new sentencing hearing.  *See* PCRA Ct. Op., 7/21/2016.  No further relief is due.

Commonwealth v. Lugo, 1247 EDA 2016, at 5, 12, 2017 WL 436490, at *2, *5–*6 (Pa. Super. 2017).

Petitioner cites Commonwealth v. Little, 455 Pa. 163, 314 A.2d 270 (1974) for the principle that a Petitioner cannot waive formal notice of the charges against him.  Although Little holds that subject matter jurisdiction cannot be waived, it does not stand for the proposition that the mere assertion of an alleged defect in the Criminal Information deprives the court of subject matter jurisdiction.  *See* Commonwealth v. Jones, 593 Pa. 295, 304–308, 929 A.2d 205, 210–212 (2007); Commonwealth v. Goldblum, 498 Pa. 455, 473–476, 447 A.2d 234, 243–245 (1982); Commonwealth v. Hatchin, 709 A.2d 405, 408 (Pa. Super. 1998); *see also* Commonwealth v. Montgomery, 485 Pa. 110, 401 A.2d 318 (1979) (alleged defect in form of indictment is non-jurisdictional in nature, consequently, the issue was waived); Commonwealth v. Davenport, 255 Pa. Super. 131, 138, 386 A.2d 543,

546 (1978) (Davenport had the ability to prepare a defense as indictment gave substance of charges and was supplemented with a Bill of Particulars).

In Commonwealth v. Jones, 593 Pa. 295, 929 A.2d 205 (2007), the Supreme Court stated in part:

> The Commonwealth acknowledges the two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution. *See* Little, 314 A.2d at 272–73.
>
> First, regarding the competency of the trial court, the Commonwealth observes that the courts of common pleas have statewide jurisdiction in all cases arising under the Crimes Code, including criminal conspiracy. *See* Commonwealth v. Bethea, 574 Pa. 100, 828 A.2d 1066, 1074 (2003) (distinguishing venue from subject matter jurisdiction and holding that "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code"). …
> …
>
> We do not dispute the Superior Court's finding that the Commonwealth erred in failing to reinstitute the conspiracy charge in compliance with the procedure laid out by the Rules of Criminal Procedure. ….
>
> The existence of a procedural mistake in and of itself, however, does not divest the trial court of subject matter jurisdiction. *See* Commonwealth v. Mockaitis, 575 Pa. 5, 834 A.2d 488, 495 (2003) (defining the distinction between a court's jurisdiction, which relates "solely to the competency of the particular court" to address the general class of controversies and a court's power to act which is "the ability of a decision-making body to order or effect a certain result"). As stated above, we have clearly set forth the requirements for subject matter jurisdiction. "Our

initial inquiry is directed to the competency of the court to hear and determine controversies of the general class to which the case presented for consideration belongs." <u>Little</u>, 314 A.2d at 272–73.   There is no question that the Philadelphia County Court of Common Pleas, Criminal Division, was competent to hear cases relating to criminal conspiracy and violations of the Controlled Substance Act. *See* <u>Bethea</u>, 828 A.2d at 1074.

We next consider the provision of notice to Jones:

> To invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged.  This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction.   The right to formal notice of charges, guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9 of the Pennsylvania Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.

<u>Little</u>, 314 A.2d at 272–73.  While Jones contests the inclusion of the conspiracy charge on the information, he does not claim that the March 2003 information failed to provide a formal and specific accusation of the conspiracy charge.  Moreover, it is clear that Jones and his counsel were well aware of the charges, including conspiracy, as they negotiated a plea bargain with the Commonwealth. Finally, the December 2003 plea colloquy included a recitation of the facts alleged, the criminal charges at issue, and the relevant sentences contained in the plea bargain. Accordingly, we conclude that the Commonwealth provided Jones with formal and specific accusation of the crimes charged.  Thus, despite the procedural flaw, the trial court had subject matter jurisdiction to accept the plea.

> Accordingly, we must conclude that Jones has waived all claims of procedural deficiencies by tendering his guilty plea. "A plea of guilty constitutes a waiver of all non-jurisdictional defects and defenses.  When a defendant pleads guilty, he waives the right to challenge anything but the legality of his sentence and the validity of his plea."  Commonwealth v. Montgomery, 485 Pa. 110, 401 A.2d 318, 319 (1979) (internal citations omitted); see Commonwealth v. Irby, 445 Pa. 248, 284 A.2d 738, 739 (1971) ("It is settled law that all procedural and non-jurisdictional defects and defenses not previously raised were waived when he pleaded to the indictment.").

Jones, at 304–308, 929 A.2d at 210–212 (emphasis added).

In Commonwealth v. Hatchin, 709 A.2d 405 (Pa. Super. 1998), the Superior

Court stated in part:

> On appeal, appellant first claims the trial court lacked subject matter jurisdiction over him because the non-homicide charges were not specified in a criminal information.  An information, of course, "is a formal written accusation of an offense made by the attorney for the Commonwealth, upon which a defendant may be tried."  Pa.R.Crim.P. 3, Definitions. Its purpose "is to inform the accused of the crimes charged."  Commonwealth v. Soboleski, 421 Pa. Super. 311, 317, 617 A.2d 1309, 1312 (1992).  The right to formal notice of charges is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9, of the Pennsylvania Constitution.  Commonwealth v. Little, 455 Pa. 163, 168-170, 314 A.2d 270, 273 (1974).  Ordinarily, the requirement of formal notice is satisfied by the defendant's receipt of the criminal information.  See Pa.R.Crim.P., Ch. 200, Part I. Informations.

> In Little, the Pennsylvania Supreme Court held that subject matter jurisdiction required both that the court be competent to hear the case and that the defendant be provided with a "formal and specific accusation of the crimes charged."  Id. at 168, 314 A.2d at 273.  Appellant equates the requirement of formal notice with the procedure of filing a criminal information.

> Although Pennsylvania courts have held that a defendant may
> not be convicted of a crime for which he was not charged, no
> court has ever held that subject matter jurisdiction requires the
> Commonwealth to file a criminal information.   A criminal
> information is only a procedural mechanism, and "it is crucial
> to recognize the purpose of an information before adhering to a
> requirement which neither furthers this purpose nor conforms
> with the current law."  Soboleski, *supra* at 317, 617 A.2d at
> 1312.

Hatchin at 408 (footnotes omitted).

In Commonwealth v. Goldblum, 498 Pa. 455, 447 A.2d 234 (1982), the

Supreme Court stated in part:

> The Commonwealth appeals the Superior Court's holding that
> trial counsel was ineffective in not moving to quash the
> indictment alleging conspiracy to commit theft by deception.
> The indictment in question failed to allege that any overt acts of
> the conspiracy occurred in the county of the court assuming
> jurisdiction over the case, here Allegheny County, as is required
> under Pa.R.Crim.P. 213(a)(4). The Superior Court reasoned that
> the trial court could not take jurisdiction over the case unless an
> overt criminal act occurred within the court's jurisdiction, and
> since the accused waives his right to question insufficiencies in
> the indictment if he does not object before trial, Commonwealth
> v. Brown, 229 Pa. Super. 67, 323 A.2d 845 (1975), counsel was
> ineffective in not objecting to the court's jurisdiction and
> moving to quash the indictment. This conclusion, however, of
> necessity rests on the assumption that the defect in the
> indictment was a substantive defect and could not have been
> cured by amendment.
>
> The test for the substantive sufficiency of an indictment is that
> it must notify the defendant of the charge he has to meet.
> Commonwealth v. Petrillo, 338 Pa. 65, 12 A.2d 317 (1940).
> Indictments defective in form, however, may be amended
> pursuant to Pa.R.Crim.P. 220:

> The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense. Upon amendment the court may grant such a postponement of trial or other relief as is necessary in the interests of justice.

(Emphasis added). As the Superior Court stated in Commonwealth v. Bruce, "if the defect in an indictment is one of form, it can be amended." (formal statements in the indictment as to time, place, value, and name of the accused are open to amendment). 230 Pa. Super. 507, 509–510, 326 A.2d 628, 629 (1974). The question in the present case, therefore, is whether the defect in the conspiracy indictment, that it did not allege that overt acts occurred in the County of Allegheny, was a defect of substance or form. We disagree with the Superior Court's implicit holding that the defect in the indictment was substantive and that venue was not properly laid within Allegheny County, thus depriving the trial court of jurisdiction.

In Commonwealth v. Little, 455 Pa. 163, 168, 314 A.2d 270, 273 (1974) this Court stated that to invoke the subject matter jurisdiction of the trial court:

> It is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth Amendment to the federal Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.

The Constitutional requirement that subject matter jurisdiction requires adequate notice of charges does not in this case conflict with our conclusion that an amendment to the indictment alleging that criminal acts occurred in Allegheny County would be an amendment of form, not substance. The indictment specified with particularity the names of the conspirators, the nature of the conspiracy, the name of the victim of the conspiracy, the amount of money allegedly obtained as a result of the conspiracy, and dates or approximate dates of various meetings. Had the indictment been amended to allege that an overt act in furtherance of the conspiracy occurred in Allegheny County, an additional or different offense would not have been charged by the amendment and Goldblum would not have been better able to prepare a defense.

Subject matter jurisdiction in the trial court exists by virtue of presentation of *prima facie* evidence that a criminal act occurred within the jurisdiction of the court. Such evidence was presented. Had it not been, trial counsel could well have been ineffective had he not challenged the subject matter jurisdiction of the court. Where counsel could predict, however, that upon a motion to quash the indictment, the Commonwealth would simply amend the indictment to add that an overt act occurred in Allegheny County, counsel is not ineffective for failing so to have moved.

Accordingly, the Superior Court's reversal of the judgment of sentence on the conspiracy charge is reversed. Judgments of sentence on all charges are affirmed.

Goldblum at 473–476, 447 A.2d at 243–245.

In addition to being waived, Petitioner's claim is also meritless. Pennsylvania law regarding the date of a crime is well-settled. Pa.R.Crim.P. 560, titled, "Information: Filing, Contents, Function", provides in part:

(A) After the defendant has been held for court following a preliminary hearing or an indictment, the attorney for the

Commonwealth shall proceed by preparing an information and filing it with the court of common pleas.

(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:
…

> (3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient;

Pa.R.Crim.P. 560

In <u>Commonwealth v. Brooks</u>, 7 A.3d 852, 857–858 (Pa. Super. 2010), the

Supreme Court stated in part:

> As this Court has summarized:

> > It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty...." <u>Commonwealth v. Jette</u>, 818 A.2d 533, 535 (Pa. Super. 2003) (citation omitted).  The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense.  <u>Commonwealth v. Gibbons</u>, 567 Pa. 24, 784 A.2d 776 (2001).

> > ***However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime.*** <u>Commonwealth v. Devlin</u>, 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975).  ***Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense."***

35

> Commonwealth v. Einhorn, 911 A.2d 960, 978 (Pa. Super. 2006) (*quoting* Commonwealth v. Ohle, 503 Pa. 566, 588, 470 A.2d 61, 73 (1983)). Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused.  Einhorn, 911 A.2d at 978.  *See* Pa.R.Crim.P. 560(B)(3), **stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.**
>
> Commonwealth v. Koehler, 914 A.2d 427, 436 (Pa. Super. 2006).  **Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct."**  Commonwealth v. G.D.M., Sr., 926 A.2d 984, 990 (Pa. Super. 2007) (*quoting* Commonwealth v. Groff, 378 Pa. Super. 353, 548 A.2d 1237, 1242 (1988)). This is especially true when the case involves sexual offenses against a child victim.  Id.

Brooks at 857–858 (emphasis added).

Pa.R.Cim.P. 560 titled, "Information: Filing, Contents, Function", states:  "if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient".

Petitioner has waived any challenge to the sufficiency of the Information. All grounds for claiming an Indictment or Information is defective must be raised in a motion to quash, and if not so raised be deemed waived.  *See* Commonwealth v. Richter, 450 Pa. Super. 383, 392, n.2, 676 A.2d 1232, 1236 n.2 (1996), *affirmed*,

551 Pa. 507, 711 A.2d 464 (1998); <u>Commowealth v. Slyman</u>, 334 Pa. Super. 415, 430-431, 483 A.2d 519, 526-527 (1984); <u>Commonwealth v. Gemelli</u>, 326 Pa. Super. 388, 397–398, 474 A.2d 294, 299 (1984); <u>Commonwealth v. Kimble</u>, 323 Pa. Super. 499, 509-510, 470 A.2d 1369, 1375 (1984); <u>Commonwealth v. Spencer</u>, 308 Pa. Super. 483, 486, 454 A.2d 638, 639 (1982); <u>Commonwealth v. Williams</u>, 252 Pa. Super. 587, 588–589, 384 A.2d 935, 935–936 (1978); <u>Commonwealth v. Hughlett</u>, 249 Pa. Super. 341, 345, 378 A.2d 326, 328 (1977).

In addition, if Petitioner believed that he needed more precise dates to defend himself, he could have filed a Bill of Particulars and have the trial court decide if the dates set forth in the Information were sufficient.  Pa.R.Crim.P. 572, titled, "Bill of Particulars", provides:

> (B) The request shall set forth the specific particulars sought by the defendant, and the reasons why the particulars are requested.
> …
>
> (D) When a motion for relief is made, the court may make such order as it deems necessary in the interests of justice.
>
> > *Comment*: The traditional function of a bill of particulars is to clarify the pleadings and to limit the evidence which can be offered to support the information.

Pa.R.Crim.P. 572.

"A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or

intelligently raise pleas of double jeopardy and the statute of limitations. Commonwealth v. Simione, 447 Pa. 473, 291 A.2d 764 (1972); Commonwealth v. Dreibelbis, 493 Pa. 466, 472, 426 A.2d 1111, 1114 (1981)."  Commonwealth v. Champney, 574 Pa. 435, 451, 832 A.2d 403, 412 (2003).

Petitioner did not file a request for a Bill of Particular.  The Superior Court correctly found that this claim, raised in the context of alleged ineffectiveness of trial counsel, was waived by current counsel.  In Commonwealth v. Wilson, 825 A.2d 710, 715 (Pa. Super. 2003), the Superior Court stated in part:

> It is well settled that the date of the commission of the offense must be fixed with reasonable certainty.  Commonwealth v. Devlin, 460 Pa. 508, 512, 333 A.2d 888, 890 (1975).  However, we recognize the Commonwealth contends this issue is waived because Appellant failed to raise this claim before the trial court.  Based upon our review, it is evident that Appellant failed to raise this issue at trial or in post-trial motions.  Specifically, Appellant did not file a motion for a bill of particulars or a notice of alibi.  Therefore, we find this issue is waived.  See Pa.R.A.P. 302(a) stating, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."[.]

Wilson at 715.

Petitioner also relies on Gov't of Virgin Islands v. Brathwaite, 782 F.2d 399, 408 (3d Cir. 1986) and United States v. Rosenbarger, 536 F.2d 715, 721-722 (6th Cir. 1976), cert. denied, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977) in support of his argument that a claim of "multiplicity" cannot be waived. Brathwaite and Rosenbarger are applying waiver principles under the Federal

Rules of Criminal Procedure, which are not relevant to the case at bar. Pennsylvania waiver principles are not governed by the Federal Rules of Criminal Procedure.

Petitioner cites the principle that a Petitioner cannot waive formal notice of the charges against him.  Although subject matter jurisdiction cannot be waived, the mere assertion of an alleged defect in a Criminal Information does not deprive the court of subject matter jurisdiction.  Petitioner's claim is meritless.  The law regarding the date of a crime is well-settled.  Pa.R.Cim.P. 560 titled, "Information: Filing, Contents, Function", states:  "if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient".  Case law has further established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct.

Petitioner claim is a collateral attack on the sufficiency of evidence.  On direct appeal, the Superior Court found that there was more than sufficient evidence to sustain Petitioner's convictions.  *See* Commonwealth v. Oscar Lugo, 2215 EDA 2007, 5-18.  The Superior Court stated in part:

> In this case, the trial court found that there was sufficient evidence to support the 93 aggregate counts of illegal delivery and PWID pursuant to 35 P.S. § 780-113(a)(30) because the evidence established that Lugo was the "head of an illegal drug

enterprise" that sold 20 to 30 kilograms of cocaine twice per month and that Lugo "was directing the activities of his underlings." Trial Court Opinion, 12/13/2007, at 14. The trial court found that the Commonwealth provided evidence of a pyramid scheme, "where drugs filtered from Lugo down through several levels to lower level street dealers and money ascended from those same street dealers to Lugo." Id. The Commonwealth linked a series of narcotics transactions to Lugo, in several ways, which the trial court found sufficient.
…

We find the trial court's findings supported by the record.

Commonwealth v. Oscar Lugo, 2215 EDA 2007, 7-8.

In his Pa.R.A.P. 1925 Opinion, the Honorable James P. MacElree, II, addressed this claim in part as follows:

> We begin with **Appellant's first claim**, that by imposing multiple punishments for the same crime, the sentence violated the Double Jeopardy Clause. Appellant asserts that the July 5, 2007 Information charging Appellant with multiple drug offenses was not sufficiently distinct and did not sufficiently identify the dates, locations and quantities of drugs alleged to have been trafficked. Appellant asserts that all ninety-three drug counts of which he was convicted charge the same crime, and that the appropriate remedy for a multiplicitous charging instrument is to impose a single sentence for all of those convictions. In support he cites to the United States Supreme Court case of Jones v. Thomas, 491 U. S. 376 (1989). In Jones, the Supreme Court addressed the issue of whether, consistent with double jeopardy principles, the longer of a consecutively imposed sentence could remain in force after the vacation of the shorter sentence which the defendant had already finished serving. Jones does not support Appellant's argument.
>
> The information of July 5, 2007, charged Appellant with sixty-three counts of delivery of cocaine between July 1, 2001 and March 31, 2004. It also charged him with thirty counts of

possession with intent to deliver cocaine between July 1, 2001 and March 31, 2004.  On August 2, 2007, the jury specifically found that, sixty-three times between July 1, 2001 and March 31, 2004, Appellant illegally delivered cocaine.  The jury also specifically found that, thirty times between July 1, 2001 and March 31, 2004, Appellant illegally possessed cocaine with the intent to deliver it.  The Superior Court found, in its March 16, 2009 opinion affirming Appellant's judgment of sentence, that there was "sufficient evidence to support [all 93 of Appellant's] convictions for illegal delivery and PWID."  Commonwealth v. Lugo, No. 2215 EDA 2007, at 13 (Pa. Super. March 9, 2009).

Appellant was being resentenced because the minimum mandatory sentencing laws of Pennsylvania related to drug trafficking were found to be unconstitutional, and not because he had successfully challenged his conviction for ninety-three separate drug offenses.  On March 24, 2016, after his PCRA hearing, we declined to vacate his convictions.  The Superior Court affirmed that ruling on February 1, 2017.  Accordingly, at sentencing, we properly imposed sentence on all ninety-three of Appellant's separate convictions.

December 20, 2017 Opinion, the Honorable James P. MacElree, II, at 3-5.

On January 18, 2019, in Commonwealth v. Oscar Lugo, 2794 EDA 2017, 2019 WL 256503 (Text), 209 A.3d 514 (Table) (Pa. Super. 2019), the Superior Court rejected this claim stating in part:

In his first claim, Lugo argues that his sentence violates the Double Jeopardy Clause of the Fifth Amendment because the 93 counts of distribution and PWIDs do not contain facts regarding location, times and drug quantities, and as such, do not constitute more than a single crime.  Therefore, he contends, the trial court sentenced him multiple times for a single offense because the 93 counts were not sufficiently distinguished by particularized facts.  We disagree.

The Pennsylvania Rules of Criminal Procedure provide that an information is valid and sufficient if it contains "an allegation that it was committed on or about any date within the period fixed by the statute of limitations." Pa.R.Crim.P. 560(B)(3). This Court has opined that "due process is not reducible to a mathematical formula and the Commonwealth does not always need to prove a specific date of an alleged crime." Commonwealth v. Brooks, 7 A.3d 852, 857-58 (Pa. Super. 2010). Further, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." Id. If the exact date of an offense is unknown, "an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations" is sufficient. Id. Finally, our case law has regularly "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." Id. (emphasis added).

Here, Lugo was involved in a criminal enterprise that entailed a continuous course of illegal conduct - acquiring drugs and distributing them. Because of the duration and regularity of these crimes, the Commonwealth had permissible leeway regarding the dates provided in the criminal informations.

Lugo argues that due process required more precise dates in order for him to effectively defend himself. Lugo relies heavily on Commonwealth v. Little, 314 A.2d 270, 272-73 (Pa. 1974), where the court stated:

> To invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9 of the

> Pennsylvania Constitution is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.

Id. at 272-73 (citations omitted).

Lugo's reliance on Little is misplaced.  Little stands for the principle that subject matter jurisdiction cannot be waived; it does not hold that an assertion of an alleged defect in the criminal information deprives the court of subject matter jurisdiction.  Contrary to Lugo's argument that the allegedly flawed criminal informations violated his due process rights, our Supreme Court has held that "the existence of a procedural mistake in and of itself ... does not divest the trial court of subject matter jurisdiction.  Commonwealth v. Jones, 929 A.2d 205, 211 (Pa. 2007).

Further, our Supreme Court has held that "the test for the substantive sufficiency of an indictment is that it must notify the defendant of the charge he has to meet."  Commonwealth v. Goldblum, 447 A.2d, 234 (Pa. 1982).  We find that the alleged defects in the criminal informations were unsubstantial.  Lugo was well notified as to the charges that were brought against him.  The information of July 5, 2007, charged Lugo with numerous drug offenses which took place between July 1, 2001, and March 1, 2004.  Criminal Informations are to be read in a common sense fashion.  See Brooks, supra.  As such, a common sense reading would lead a reasonable person to conclude that the 93 charges occurred intermittently between July 1, 2001, and March 1, 2004.

We conclude that the criminal informations were not "multiplicitous" and provided adequate notice to Lugo as is required by due process.  Thus the subsequent sentences imposed by the trial court did not violate the Double Jeopardy Clause and were therefore legal.

We note that Lugo is essentially raising a sufficiency of the evidence claim that is couched in an illegal sentence argument.

Lugo's direct appeal stems from his new sentence. This Court had previously vacated his original sentence and ordered the trial court to resentence him according to a change in sentencing laws, and, as such, he may only raise claims pertaining to his new sentence. A jury convicted him of 93 counts of possession and PWIDs in 2005, and this Court affirmed that verdict, finding that there was sufficient evidence to uphold the entirety of those convictions. Now, Lugo asserts that there were insufficient facts presented in the criminal informations. Thus, he now asserts that there was not enough evidence to sustain all but one of those convictions, and therefore, his sentence is invalidated by the Double Jeopardy Clause. In order to even address whether his sentence is illegal under the Double Jeopardy Clause, we would first have to conclude that there was insufficient evidence to convict Lugo of 93 counts of drug crimes. As we have stated above, we have already ruled sufficient evidence existed to convict Lugo on all counts. Hence, our decision stands.

Commonwealth v. Lugo, 2794 EDA 2017, 4-8, 2019 WL 256503, at *2-*3 (Pa. Super. 2019)

Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

**GROUND 2.    PETITIONER'S CLAIMS BASED ON A CO-DEFENDANT'S INCREDIBLE RECANTATION TESTIMONY WERE CORRECTLY REJECTED BY PENNSYLVANIA COURTS.**

Petitioner seeks and sought relief based upon alleged after-discovered evidence; specifically, the incredible recantation of co-defendant Luis Colon,

alleging he committed perjury at Petitioner's trial.  42 Pa.C.S.A. § 9543, titled,

"Eligibility for relief", provides in pertinent part:

> **(a)  General  rule.  --**  To  be  eligible  for  relief  under  this
> subchapter,  the  petitioner  must  plead  and  prove  by  a
> preponderance of the evidence all of the following:
>
> …
>
> (2) That the conviction or sentence resulted from one or more
> of the following:
>
> …
>
> > (vi) The unavailability at the time of trial of exculpatory
> > evidence  that  has  subsequently  become  available  and
> > would have changed the outcome of the trial if it had been
> > introduced.

42 Pa.C.S.A. § 9543.

"After discovered evidence can be the basis for a new trial only if it: 1) has

been discovered after the trial and could not have been obtained at or prior to the

conclusion of the trial by the exercise of reasonable diligence; 2) is not merely

corroborative or cumulative; 3) will not be used solely to impeach the credibility of

a witness; and 4) is of such nature and character that a different verdict will likely

result if a new trial is granted."  Commonwealth v. McCracken, 540 Pa. 541, 549,

659 A.2d 541, 545 (1995).  Furthermore, the proposed new evidence must be

producible and admissible.  Commonwealth v. Brosnick, 530 Pa. 158, 162, 607

A.2d 725, 727 (1992).  After discovered evidence offered only to impeach the

credibility of a witness who testified at trial, does not constitute a sufficient ground

for granting a new trial.  <u>Commonwealth, ex rel. Meyers v. Stern</u>, 509 Pa. 260, 265, 501 A.2d 1380, 1382 (1985).  In <u>Commonwealth v. Small</u>, 647 Pa. 423, 189 A.3d 961 (2018), the Supreme Court defined "merely corroborative or cumulative" evidence:

> [W]e reaffirm that after-discovered evidence is merely corroborative or cumulative - and thus not sufficient to support the grant of a new trial - if it is of the same character and to the same material point as evidence already adduced at trial.  It is clear the terms "of the same character" and "to the same point" refer to distinct qualities of evidence; to be "merely corroborative or cumulative," newly discovered evidence must tend to prove material facts that were already in evidence at trial, and also be of the same grade or character of evidence as that produced at the trial to prove those material facts.  If the new evidence is of a different and "higher" grade or character, though upon the same point, or of the same grade or character on a different point, it is not "merely" corroborative or cumulative, and may support the grant of a new trial based on after-discovered evidence.

<u>Small</u>, at 444-445, 189 A.3d at 973-974 (citation omitted).

Recantation evidence is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury.  As recantation testimony is recognized as notoriously unreliable, it should only be accepted with great caution. <u>Commonwealth v. Douglas</u>, 558 Pa. 412, 430, 737 A.2d 1188, 1198 (1999); <u>Commonwealth v. Dennis</u>, 552 Pa. 331, 356, 715 A.2d 404, 416 (1998); <u>Commonwealth v. Henry</u>, 550 Pa. 346, 363-364, 706 A.2d 313, 321 (1997); <u>Commonwealth v. McCracken</u>, 540 Pa. 541, 548, 659 A.2d 541, 545 (1995);

Commonwealth v. McNeil, 506 Pa. 607, 617 n.4, 487 A.2d 802, 807 n.4 (1985);

Commonwealth v. Lee, 478 Pa. 70, 75, 385 A.2d 1317, 1320 (1978);

Commonwealth v. Anderson, 466 Pa. 339, 342, 353 A.2d 384, 386 (1976).

Even when recantation testimony is not involved, Pennsylvania Courts have also looked with disfavor on alleged exculpatory post-verdict testimony of accomplices who realistically have little to lose by attempting to free their partners in crime.  In Commonwealth v. Lambert, 529 Pa. 320, 344, 603 A.2d 568, 579-580 (1992), the Supreme Court of Pennsylvania stated:  "Our prior rulings also look with much disfavor on post-verdict testimony of jailed accomplices whose sentences have been imposed by the court."  See Commonwealth v. Treftz, 465 Pa. 614, 351 A.2d 265 (1976), cert. denied, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976); Commonwealth v. Tervalon, 463 Pa. 581, 345 A.2d 671 (1975).

As previously discussed, recantation evidence is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury.  Even when recantation testimony is not involved, Pennsylvania Courts have also looked with disfavor on alleged exculpatory post-verdict testimony of accomplices who realistically have little to lose by attempting to free their partners in crime. Moreover, when discussing the Declaration Against Penal Interest exception to the hearsay rule, Pennsylvania Courts have also addressed and consistently recognized the inherent untrustworthiness of an accomplice's hearsay statement offered to

47

exculpate his partner in crime.  Commonwealth v. Davis, 308 Pa. Super. 398, 402-403, 454 A.2d 595, 597 (1982).  Cases that discuss the *Declaration Against Penal Interest* exception to the hearsay rule provide an instructive framework for considering an accomplice's statement offered to exculpate his partner in crime.

In Commonwealth v. Scott, 503 Pa. 624, 470 A.2d 91 (1983), the Supreme Court of Pennsylvania stated in part:

> This Court has previously warned that post-verdict accomplice testimony should be considered with caution.  Commonwealth v. Gaddy, 492 Pa. 434, 424 A.2d 1268 (1981); Commonwealth v. Coleman, 438 Pa. 373, 264 A.2d 649 (1970).  Although the trial court did not actually hear testimony from co-indictee Hill, the post-trial motion statement exonerating appellant was clearly untrustworthy and unreliable, bordering on charade.  During his own trial, Hill disclaimed any complicity in the assault.  Then following appellant's trial, appellant's attorney discovered another statement made by Hill in which he simultaneously confessed to the shooting and exonerated appellant.  These two polarized statements were totally inconsistent and contradictory.  Both of them could not be true.  To say that the second statement was more reliable and credible than the first would be pure speculation, especially when the first one was given under oath while the second was not.

Scott at 630, 470 A.2d at 94 (footnote omitted).

In Commonwealth v. Anderson, 501 Pa. 275, 461 A.2d 208 (1983), the Supreme Court of Pennsylvania stated in part:

> Finally, appellant claims that the failure of counsel to interview "Anthony Spruill" and to subpoena him for trial constitutes ineffectiveness.  Spruill was called by appellant at the post-trial hearing.  The offer of proof was that this witness would testify as to a conversation he had with one Jerome Williams wherein

Williams "indicated that he was the perpetrator of this crime and that Mr. Anderson had nothing to do with it."  The court sustained the Commonwealth's objection and refused to allow Spruill to so testify.  This ruling was correct and no ineffectiveness of trial counsel has been demonstrated.

In Commonwealth v. Colon, 461 Pa. 577, 337 A.2d 554 (1975), this Court recognized the "declaration against penal interest" exception to the hearsay rule, but noted that "it is not the statement that must be against interest, but the fact stated."  461 Pa. at 583-84, 337 A.2d 554, *quoting* Wigmore, 5 Wigmore, Evidence § 1462, at 337.  Accordingly, we held that "the fact stated in that portion of Hernandez's (Colon's accomplice) confession which exculpated any possible accomplices was not against interest and hence that portion was inadmissible."  461 Pa. at 584, 337 A.2d 554.  Furthermore, that portion of Hernandez's statement which did state facts against penal interest (*i.e.*, that Hernandez committed the crime) was deemed inadmissible because it was irrelevant to the case.  Id. at 585, 337 A.2d 554.  In Colon, the prosecution had proceeded on an accomplice theory, i.e., that both Hernandez and Colon had acted in concert to commit the burglary/homicide, "thus Hernandez's statement admitting his role in the crime was not inconsistent with the Commonwealth's theory of the crime.  As such, his confession did not meet the test of relevancy because it would not tend to make the inference that Colon did not participate in the crime more likely."  Id. at 585, 337 A.2d 554. *See also* Commonwealth v. Garland, [475 Pa. 389, 380 A.2d 777 (1977)].

As in Colon, the portion of Sidney Williams' alleged declaration that he committed the crime is irrelevant; the portion that appellant had nothing to do with the crime is inadmissible hearsay.  Again, counsel's ineffectiveness cannot be considered in a vacuum, and counsel cannot be deemed ineffective for failing to interview a witness whose testimony could not have been beneficial because it was not admissible.

Anderson at 288-289, 461 A.2d at 214-215 (citations omitted) (footnote omitted)

(citations to record omitted).

In <u>Commonwealth v. Barker</u>, 325 Pa. Super. 357, 472 A.2d 1158 (1984), the

Superior Court of Pennsylvania stated in part:

> On appeal, the appellant contends that the trial court erred when it refused to admit into evidence statements of the co-defendants' given to police shortly after their arrest. Defendant claims that said statements should have been admitted into evidence as declarations against penal interests. In the statements the co-defendants' implicated themselves in the aforesaid crimes, but claimed that defendant did not commit same, but, rather, was picked up in the automobile by them at a time subsequent to the robbery. Defendant argues that the complete statements of both co-defendants' should have been admitted at trial. We note that the trial court had given the defendant ample opportunity to produce both co-defendants at his trial. Subpoenas were issued for them and a process server hired to find them, but neither co-defendant could be found by the defendant.
>
> In <u>Commonwealth v. Colon</u>, 461 Pa. 577, 337 A.2d 554 (1975), <em>cert. denied</em>, 423 U.S. 1056, 99 S.Ct. 788, 46 L.Ed.2d 645 (1976), a plurality opinion of our Supreme Court held that a declaration against penal interest may contain both exculpatory and inculpatory facts and that only the inculpatory portion of the statement is admissible as an exception to the hearsay rule because of its inherent trustworthiness. <em>See also</em> <u>Commonwealth v. Nash</u>, 457 Pa. 296, 324 A.2d 344 (1974). In the instant case the portion of the co-defendants' statements to the effect that they merely met the defendant after the crime had been committed did not constitute an admission to any additional crimes that subject them to any additional penalties. It was not contrary to their penal interests to assert that they and a third companion had acted without the defendant. In <u>Commonwealth v. Ayala</u>, 277 Pa. Super. 363, 419 A.2d 1187 (1980) we recognized the inherent unreliability of a confession exculpating possible accomplices at no cost to the defendant. The portion of co-defendants' statements exculpating the

> defendant are not contrary to their penal interests and were
> therefore properly held to be inadmissible by the court below.
> We see no valid reason to distinguish the instant case from
> Colon as the inherent unreliability of such statements is the
> reason that they have been held inadmissible and co-
> defendants' statements in this case are no more reliable than
> were those with which the Supreme Court dealt in Colon.  We
> hold that the court below ruled correctly when it refused to
> admit the co-defendants' statements.

Barker at 361-362, 472 A.2d at 1160 (footnote omitted).

In Commonwealth v. Campbell, 353 Pa. Super. 178, 509 A.2d 394 (1986),

the Superior Court of Pennsylvania stated in part:

> After the shooting, appellant and his brother fled to Louisiana.
> When Dean Campbell was apprehended, he gave a taped
> confession in which he admitted the shooting and attempted to
> exonerate his brother Michael.  At trial, Michael's attempt to
> use the statement made by his brother was met by a
> Commonwealth objection, which was sustained by the trial
> court.  On appeal, the trial court's evidentiary ruling is assigned
> as error.  Appellant contends that his brother's statement was a
> declaration against penal interest and, therefore, admissible as
> an exception to the hearsay, exclusionary rule.
>
> The law is clear, however, that "those portions of a statement
> made by an out of court declarant which are not inculpatory,
> such as statements that another person was not guilty of the
> crime, are not 'declarations against penal interest' and are not
> admissible     under     [the]     hearsay     rule     exception."
> Commonwealth v. Brinkley, 505 Pa. 442, 453-454, 480 A.2d
> 980, 986 (1984); Commonwealth v. Anderson, 501 Pa. 275,
> 289, 461 A.2d 208, 214-215 (1983); Commonwealth v. Colon,
> 461 Pa. 577, 583-585, 337 A.2d 554, 557-558 (1975), cert.
> denied, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976).
> The trial court did not err when it refused to allow into evidence
> the hearsay statement by Dean Campbell that his brother, the
> appellant, was not involved in the robbery and shooting of John

Maletsky.

Campbell at 184-185, 509 A.2d at 397 (footnote omitted).

In Commonwealth v. Bracero, 515 Pa. 355, 528 A.2d 936 (1987), the Supreme Court of Pennsylvania stated in part:

> It is clear that we recognize and accept that a declaration against the declarant's penal interest is admissible in evidence as an exception to the hearsay rule. We, however, have never endorsed the view that all such declarations against penal interest are automatically admissible as a hearsay exception merely because they are or tend to be against the declarant's penal interest. To be admissible, considerable assurance of the reliability of such a declaration is required.
>
> In the Federal Courts, the admissibility of declarations against penal interest is governed by the Federal Rules of Evidence, Rule 804(b)(3), which provides:
>
> **Statement Against Interest.**
>
> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
>
> We believe that a rule requiring assurance of the trustworthiness and reliability of an out of court statement, such as that announced in Hackett and Chambers, and as mandated by the Federal Rules of Evidence (Rule 804(b)(3)), is the better view. Experience teaches us that it is not rare for friends, peers and family members to go to extraordinary lengths to help an

accused win an acquittal or avoid a jail sentence.  In <u>Chambers</u>, the Supreme Court noted the following hypothetical:

> **A** could be charged with a crime; **B** could tell **C** & **D** that he committed the crimes; **B** could go into hiding and at **A**'s trial **C** & **D** would testify as to **B**'s admission of guilt; **A** could be acquitted and **B** would return to stand trial; **B** could then provide several witnesses to testify as to his whereabouts at the time of the crime.  The testimony of those witnesses along with **A**'s statement that he really committed the crime could result in **B**'s acquittal.  **A** would be barred from further prosecution because of the protection against double jeopardy.  No one could be convicted of perjury as **A** did not testify at his first trial, **B** did not lie under oath, and **C** & **D** were truthful in their testimony.

<u>Chambers v. State of Mississippi</u>, 93 S.Ct. at 1049.   The Commonwealth, in its brief, proposes a similar hypothetical situation as follows:

> **A** is charged with a crime based upon circumstantial evidence.  **A** convinces his girlfriend or a family member to testify that they heard **B** state that he committed the crime.  Perhaps **A** might convince two or three people to state the same story in court.  Such evidence would be powerful and could very well raise a reasonable doubt in the minds of the jury.  Moreover, if **B** is not located or if **B** is unidentified, there would be no way to test the veracity of what **A**'s friends and relatives might state.

Furthermore, it must be remembered that in such cases we are often dealing with "witnesses" who themselves are actively engaged in a criminal lifestyle.  "Telling a story" to help a friend or relative to "beat the rap," cannot be viewed as an extraordinary occurrence.   Accordingly, we hold that declarations against penal interest are admissible as an exception to the hearsay rule only when there are circumstances that provide clear assurance that such declarations are trustworthy and reliable.

> In the instant case, we find no error in the trial court's conclusion, which was affirmed by the Superior Court, that the alleged statements against penal interest attributed to "Spunk" were not made under circumstances that provide the required assurance of reliability and therefore, are inadmissible.
>
> The order of the Superior Court is affirmed.

Bracero at 364-366, 528 A.2d at 940-941 (citations omitted) (emphasis omitted) (citations to record omitted).

On December 19, 2005, co-defendant, Luis Colon entered open guilty pleas on one (1) count on two (2) separate Criminal Information Numbers: CP-15-CR-0002628-2004 [Corrupt Organizations, 18 Pa.C.S.A. § 911]; and CP-15-CR-0004043-2004 [Criminal Conspiracy - Delivery of Controlled Substance, 18 Pa.C.S.A. § 903].

On August 27, 2007, co-defendant, Luis Colon came before Judge MacElree to be sentenced. At that time, the parties had come to an agreement to make a joint recommendation concerning Luis Colon's sentence. On CP-15-CR-0002628-2004 [Corrupt Organizations], Luis Colon was sentenced to a split sentence of 11½ to 23 months, plus 5 years consecutive probation, with credit for time served from April 23, 2004 to March 23, 2006 [700 days]. With the credit for time served, Luis Colon maxed out on the prison component of the sentence on this count and was released on probation. On CP-15-CR-0004043-2004 [Criminal Conspiracy - Delivery of Controlled Substance], Luis Colon was sentenced to a split sentence of

11½ to 23 months, plus 5 years consecutive probation, with credit for time served

from March 23, 2006 to August 27, 2007 [523 days].  With the credit for time

served, Luis Colon was immediately paroled on this count.  The sentences on these

two (2) counts were partially consecutive and partially concurrent.

> There was also a special condition of probation of Luis Colon:

>> Special condition of probation would be, if necessary, the defendant's continued cooperation including truthful testimony in the cases of the Commonwealth versus Angelo Colon and Commonwealth versus Nelson Lugo.  If in any of those cases sentences are vacated and the defendant withdraws his plea of guilty, and also in the cases of Commonwealth versus Oscar Lugo, if it so happens that any sentences which the Court imposes later this week are vacated and the defendant is granted a new trial, that's the defendant Lugo and the defendant exercises his right to a new trial.

(Commonowealth v. Luis Colon; CP-15-CR-0002628-2004, CP-15-CR-0004043-

2004; N.T. 08/27/07, 6-7).

On August 1, 2007, co-defendant, Luis Colon testified and was thoroughly

cross-examined at Petitioner's trial.  (N.T. 08/01/07, 78-174).  Luis Colon is the

half-brother of Petitioner.  (N.T. 08/01/07, 83).  On December 19, 2005, at Luis

Colon's guilty plea, Luis Colon orally admitted to the same facts that he would

later testify to at Petitioner's trial.  (Commonowealth v. Luis Colon; CP-15-CR-

0002628-2004, CP-15-CR-0004043-2004; N.T. 12/19/05, 3-6).  In his Written

Guilty Plea Colloquy, Luis Colon also admitted to the same facts that he would

later testify to at Petitioner's trial.  Luis Colon also agreed that no threats had be

used against him:

### VOLUNTARINESS OF PLEA

I agree that:

17.    No one has used any force or threats against me in order to get me to enter this plea of guilty.

18.    No promises have been made to me in order to get me to enter this plea other than what is set forth in the plea bargain agreement, if any, on pages 3 and 4 of this guilty plea form.

(Commonowealth v. Luis Colon; CP-15-CR-0002628-2004, CP-15-CR-0004043-

2004; Written Guilty Plea Colloquy, at 6, ¶17, ¶18).

On August 1, 2007, at Petitioner's trial, Luis Colon was cross-examined in

part as follows:

BY MR. SANTAGUIDA:

Q.    You pled guilty in two counts, correct?

A.    Yes.

Q.    As part of the guilty plea colloquy, they had to inform you what the maximum penalty was for each count, did they not?

A.    Yes, the Judge told me.

Q.    What did he tell you?

A.    One was 10 to 20.  The other was 20 to 40.

Q.      20 to 40?

A.      That was one of them, organized crime or organization.

Q.      So you are facing a 30-year sentence, correct?

A.      That's what they said.

Q.      They told you a 30-year sentence, correct?

A.      Yes.

Q.      And you are expecting or hoping as a result of your testifying in this case that you are going to get somehow less than that, correct?

A.      Yes.

Q.      'Cause you are aware that the other defendants in this case got a high sentence.  You know that; isn't that correct?

A.      Yes.

Q.      Nelson got a high sentence, correct?

A.      Yes.

Q.      Angel got a high sentence, correct?

A.      Yes.

Q.      By testifying, you want something way less than they got.  Would that be fair to say?

A.      If that's what you want to say.

Q.      That's what you want to say.

A.      You -- you are the one who is saying that.

Q.     I know I'm the one saying that.  I want to know if you can say --

THE COURT:       Counsel --

BY MR. SANTAGUIDA:

Q.     I said, if that's what you want to say, you can say it.

THE COURT:       That is not a question.  Ask him a direct question.

BY MR. SANTAGUIDA:

Q.     Can you say you are testifying in preparation of getting a much lesser sentence than Nelson and Angel got?

THE COURT:       Are you repeating those words or asking a question?

BY MR. SANTAGUIDA:

Q.     Are you expecting a lesser sentence?

A.     Yes.

Q.     Now, you discussed with your lawyer the fact that you know the consequences of pleading guilty and cooperating with the Commonwealth, did you not?

A.     Yes.

Q.     And it was explained to you that in order for you to get a lesser sentence, that was what you had to do, correct?

A.     Not at the time though.

Q.     I'm sorry?

A.     She never told me at the actual time.

58

Q.    That you are going to get -- if you want to anticipate a lesser sentence, you have to cooperate, correct?

A.    Yes.

Q.    And you were aware that one of the people that the Commonwealth wanted was Oscar Lugo, your brother, correct?

A.    Yes.

Q.    As a matter of fact, when they discussed it with you, that's one of the first questions they ask you is, tell us about Oscar, correct?

A.    When?  What?  Today?

Q.    No.  No.  When you first sat down and decided to cooperate --

A.    I don't understand what you are saying.

Q.    At some point, there was an arrangement made where you said I'm going to cooperate and tell you what I know, correct?

A.    Yes, the truth.

Q.    Well, whether it's the truth or not is another question.

THE COURT:    We don't need your editorial comments. Ask a question, please.  Don't make any more editorial comments.

BY MR. SANTAGUIDA:

Q.    Do you remember being interviewed by Trooper Kelly Cruz and Trooper Alan Lohman?  This doesn't have a date, but I'm sure it was more than a year ago.  Remember that?

A.      Yes.

Q.      And one of the first things they said to you was the reason we have you, Luis, is we want to talk to you about your relationship involving Oscar Lugo, Nelson Lugo, Angel Colon and yourself and Tony Reyes just like we talked about earlier. Remember them saying that to you?

A.      Yes.

Q.      So before they put -- did a formal interview, which was taped, they talked to you before that, correct?

A.      Yes.

Q.      And one of the things they said is, we want to know about Oscar.  And you knew they wanted to know.

A.      I told them I would tell them the truth.  That's what I told them.

Q.      They wanted to know about Oscar, didn't they?

A.      Yes.

Q.      And you knew Oscar was the person they were interested in, did you not?

A.      Yes.

Q.      And you knew if you told about Oscar, it would help you with your sentence.  Is that a fair sentence?

A.      If that's how you want to say it.

Q.      Is that how you can say it, too?

A.      No.

Q.      How do you want to say it?

A.     I'm taking it like you are saying it.

(N.T. 08/01/07, 143-148).

BY MR. SANTAGUIDA:

Q.     When were you arrested?

A.     Arrested?

Q.     Yes.

A.     April 23rd.

Q.     Of what, 2004?

A.     Yes.

Q.     Okay.  And when was your decision to cooperate?  Was it the next month or two months later or the very day you were arrested?

A.     Couple months.

Q.     Couple months.  So that put us around June or July of '04?

A.     Yes.

Q.     Do you remember sitting down and being interviewed about a statement with Kelly Cruz and the other trooper?

A.     Yes.

Q.     How much time after you agreed to cooperate was that?

A.     I don't remember.

Q.     Was it like after you said cooperate -- I want to cooperate, did they bring you in for this interview?  Was it within a month or so?

A.     Like a month, yeah.

Q.     So when you say when this happened, it was sometime in the middle of 2004?

A.     Yes.

THE COURT:     When you say" this," what are you referring to?

MR. SANTAGUIDA:     This interview.

THE COURT:     Thank you very much.

BY MR. SANTAGUIDA:

Q.     Is that correct?

A.     Yes.

Q.     So you would say your memory about some of the affairs was more clear or better two years ago as opposed to today, is that fair to say?

A.     No.

Q.     I'm sorry?

A.     No.

Q.     No?  Is it the same?

A.     It's the same.

Q.     The same?

A.      I'm telling the truth.

(N.T. 08/01/07, 150-152).

On August 1, 2007, co-defendant, Luis Colon testified and was thoroughly cross-examined at Petitioner's trial.  On December 19, 2005, at his guilty plea, Luis Colon orally admitted to the same facts that he would later testify to at Petitioner's trial.  In his Written Guilty Plea Colloquy, Luis Colon also admitted to the same facts that he would later testify to at Petitioner's trial.  When attacked on cross-examination at Petitioner's trial, Luis Colon clearly stated that he was telling the truth.  More than seven (7) years later, Luis Colon wished to recant his prior statements and sworn testimony in an attempt to aid his co-defendant brother and partner in crime.  There is no objective factor that would support giving any weight to that Luis Colon's recantation.

On August 27, 2007, at Luis Colon's sentencing, Judge MacElree specifically commented that Luis Colon's testimony in Petitioner's trial was "quite credible" and that his "candor" was appreciated:

> **THE COURT:**    Yes, he certainly appeared to me to be quite credible when he testified.  I don't think you should diminish your part in the way you handled the case.
>
> Mr. Colon, it was apparent to the Court that you were doing your very best to be truthful, and I thought you came across as credible.  I thought that was very important.
>
> I also know it was a difficult decision for you to have to testify against a family member.  We appreciate your candor.

**THE DEFENDANT [Luis Colon]:**   Thank you!

(Commonowealth v. Luis Colon; CP-15-CR-0002628-2004, CP-15-CR-0004043-2004; N.T. 08/27/07, 2-3).

Every objective factor indicates that Luis Colon's recantation is not credible. Luis Colon has acted in such a way as to limit his own potential exposure while attempting to aid his co-defendant brother and partner in crime.  Luis Colon waited until his parole and probation had expired so he could not be found in violation of his plea agreement to cooperate and testify truthfully against his co-defendants. Luis Colon waited until the statute of limitations had run on his initial conduct so he could not be charged with additional offenses.  *See* 42 Pa.C.S.A. § 5552(b) (prosecution must be commenced within five (5) years after it is committed).  Luis Colon waited until the statute of limitations had run on a potential perjury charge for his trial testimony so he could not be charged with perjury for his trial testimony.  *See* 42 Pa.C.S.A. § 5552(a) (prosecution must be commenced within two (2) years after it is committed).  Moreover, since the statute of limitations has run on a potential perjury charge for his trial testimony, a potential perjury charge related to his recantation would be more difficult to prove.  18 Pa.C.S.A. § 4902, titled, "Perjury", provides in part as follows:

> **(e) Inconsistent statements. --** Where the Petitioner made inconsistent statements under oath or equivalent affirmation, ***both having been made within the period of the statute of***

> *limitations*, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and not believed by the defendant. ***In such case it shall not be necessary for the prosecution to prove which statement was false but only that one or the other was false and not believed by the defendant to be true***.

18 Pa.C.S.A. § 4902 (emphasis added).

Recantation evidence is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury.  As recantation testimony is recognized as notoriously unreliable, it should only be accepted with great caution. Even when recantation testimony is not involved, Pennsylvania Courts have also looked with disfavor on alleged exculpatory post-verdict testimony of accomplices who realistically have little to lose by attempting to free their partners in crime. Co-defendant Luis Colon's recantation is a clear example of why recantation testimony is the least reliable form of proof and notoriously unreliable.

Judge MacElree ordered the Commonwealth to file a Response to Petitioner's PCRA petition.  The Commonwealth filed a Response which included the facts and law cited above.  Judge MacElree then issued a Notice of Intent to Dismiss the PCRA petition.  Consequently, Judge MacElree's decision to issue a Notice of Intent to Dismiss the PCRA petition was based on the facts and law cited above and not from a bias as alleged by Petitioner in his recusal claim.

Petitioner filed a Response to the Notice of Intent to Dismiss the PCRA

petition.  PCRA counsel relied on the February 10, 2015 Affidavit of Luis Colon

recanting his trial testimony.  Upon consideration of Petitioner's Response to the

Notice of Intent to Dismiss the PCRA petition, Judge MacElree scheduled a PCRA

hearing.  However, the PCRA hearing clearly demonstrated that co-defendant Luis

Colon's recantation was not credible.   At the PCRA hearing co-defendant Luis

Colon repudiated much of his sworn Affidavit, prepared by current counsel who

was also PCRA counsel, which was used as the basis for requesting an evidentiary

hearing.  (R.250a-257a, 261a-263a; N.T. 03/21/16, 26-33, 37-39).

      In addressing this claim Judge MacElree stated in pertinent part:

> In his second issue on appeal, Appellant claims that his
> conviction was obtained through the use of the perjured
> testimony of Luis Colon.  In his affidavit dated February 6,
> 2015, Mr. Colon claimed that the testimony he gave at
> Appellant's trial was "fraudulent, coerced, given under the [sic]
> duress and was the product of information provided fed to me
> by the [State] Troopers."  Mr. Colon also stated that he was told
> that unless he provided "incriminating testimony against
> [Appellant], I would take his place as being the head of this
> drug enterprise and be prosecuted to the fullest extent of the
> law."  Mr. Colon went on to state that "[w]hile it is certainly
> true that I was involved in this [drug] organization, [Appellant]
> was not."  On appeal, Appellant claims that the Court should
> have accepted Mr. Colon's PCRA testimony that he was
> threatened and coerced by two Pennsylvania State Troopers into
> falsely testifying that Appellant was the leader of a large-scale
> cocaine operation.
>
> As stated previously, recantation evidence is considered the
> least reliable form of proof, especially when it involves an
> admission of perjury.  Coleman, 264 A.2d at 651.  However,
> even if the recantation appears dubious, a PCRA court must

nevertheless "assess the credibility and significance of the recantation in light of the evidence as a whole." Commonwealth v. D'Amato, 856 A.3d 806,825 (Pa. 2004). Accordingly prior to issuing our ruling denying Appellant PCRA relief on this claim, we made such an assessment.

At the PCRA hearing held on March 21, 2016, Mr. Colon testified that, after he was arrested on April 1, 2004, two state troopers told him that he had to "cooperate with them because, if not it was going to be me or [Appellant]." N.T. 3/21/16, p. 8. He further testified that the state troopers said they "wanted" Appellant, and wanted Colon to testify, falsely, against Appellant. N.T. 3/21/16, p. 9. Colon testified that he agreed to lie because he was scared of, and threatened by, the state troopers. N.T. 3/21/16, pp. 10, 14. He went on to admit that he completed a guilty plea colloquy in which he asserted that no threats or promises had been made in order to get him to plead guilty. N.T. 3121116, pp. 24-25. He also testified that the factual averments in his guilty plea colloquy, which stated that he participated with Appellant in the sale and distribution of cocaine, were not true. N.T. 3/21116, pp. 27-28. He testified that he lied under oath on December 19, 2005, when he pled guilty to the crimes of corrupt organizations and criminal conspiracy. N.T. 3/21/16, pp. 31-32. He testified that he lied under oath at Appellant's trial when he testified that he saw kilograms of cocaine at Appellant's business. N.T. 3/21/16, pp. 10-11. He testified that he lied under oath at Appellant's trial when he testified that he was present when 25-30 kilograms of cocaine were delivered to Appellant at his business. N.T. 3/21/16, p. 11. He testified that he lied under oath at Appellant's trial when he testified that after Appellant received the cocaine, a different automobile would then be loaded with money. N.T. 3/21/16, pp. 11-12. He testified that he lied under oath at Appellants trial when he testified that he (Colon) distributed cocaine for Appellant, and picked up money from Appellant's cocaine customers. N.T. 3/21/16, p. 13.

Mr. Colon testified that he was coming forward with this information now because it "wasn't right what [the troopers] did to me," and that it was "eating [him] up little by little."

N.T. 3/21/16, p. 20.

In reviewing this testimony, we note that we presided over Appellant's trial, and thus heard Mr. Colon's trial testimony as it was given. During Mr. Colon's sentencing hearing on August 27, 2007, we referenced his trial testimony and noted that he "appeared to me to be quite credible when he testified." N.T. 8/27/07, p. 3.

We also consider Mr. Colon's legal vulnerability in recanting his trial testimony. On August 27, 2007, Mr. Colon was sentenced to 11½ to 23 months in prison followed by sixty months of probation on the charge of corrupt organizations. By the date of sentencing, he had already served 23 months and was immediately released. See: N.T. 8/27/07, pp. 6, 10. On the charge of criminal conspiracy, he was sentenced to 11½ to 23 months in prison followed by sixty months of probation. He was immediately paroled on that charge as well. N.T. 8/27/07, pp. 7-8, 10. A special condition of both probation and parole was Mr. Colon's continued cooperation, including truthful testimony, in Appellant's case. N.T. 8/27/07, pp. 6-8. Mr. Colon has completed his probationary period, and thus has little to lose by now asserting that his brother is completely innocent of the ninety-six crimes of which he was convicted.

Prior to preparing this opinion, we again read Mr. Colon's hearing testimony. See: N.T. 3/21/16, pp. 6-47. In it he acknowledged that he had lied, multiple times, while under oath. Nevertheless, with absolutely no independent evidence supporting him, he also asserted that we should accept his current version of the facts as the truth. However, even his current version is inconsistent. Mr. Colon stated in his affidavit of February 6, 2015 that he, Colon, (but not Appellant) was involved in the drug operation. Contradicting his own sworn affidavit, at the PCRA hearing he insisted he (Colon), actually had no involvement in any drug activity whatsoever. N.T. 3/21/16, pp. 27-30. Given the opportunity, he was unable to explain the difference between his signed affidavit and his hearing testimony. N.T. 3/21/16, pp. 37-38.

It is the duty of the court to deny a new trial where it is not satisfied that the recantation evidence offered is true. Coleman, 264 A.2d at 651. We did not find credible Mr. Colon's PCRA hearing testimony in which he attempted to completely disassociate Appellant, and also himself, from any involvement in this large-scale, long-term drug operation. Simple stated, we did not, and do not, find the current statements of Mr. Colon in any way credible. Since a prerequisite to granting relief on a claim involving recantation testimony is that the evidence be credible to the trial court, Commonwealth v. Loner, 836 A.2d 125, 135 (Pa. Super. 2003), we properly denied Appellant PCRA relief on this claim.

July 21, 2016 Opinion of the Honorable James P. MacElree, II, 5-9.

On February 1, 2017, in Commonwealth v. Oscar Lugo, 1247 EDA 2016, 2017 WL 436490 (Text), 161 A.3d 366 (Table) (Pa. Super. 2017), the Superior Court rejected this claim stating in part:

In his second issue, Appellant avers that the PCRA court erred in denying him a new trial based on after-discovered evidence. See Appellant's Br. at 19-22; 42 Pa.C.S. § 9543(a)(2)(vi). We review an order denying a petition under the PCRA to determine "whether the PCRA court's findings are supported by the record and without legal error." Commonwealth v. Edmiston, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." Commonwealth v. Koehler, 36 A.3d 121, 131 (Pa. 2012). This Court is also bound by the PCRA court's credibility determinations where supported by the record. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009) (citations omitted). Notwithstanding, we review the PCRA court's legal conclusions de novo. See Commonwealth v. Medina, 92 A.3d 1210, 1215 (Pa. Super. 2014), appeal granted, 105 A.3d 658 (Pa. 2014), appeal dismissed as improvidently granted, 140 A.3d 675 (Pa. 2016).

Our Supreme Court has explained a petitioner's burden to receive a new trial based on after-discovered evidence as follows.

[The PCRA petitioner must show that the evidence] (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

Medina, 92 A.3d at 1218 (quoting Commonwealth v. Pagan, 950 A.2d 270, 292 (Pa. 2008), *cert. denied*, Pagan v. Pennsylvania, 555 U.S. 1198 (2009)).  The test for after-discovered evidence is conjunctive, and this Court may affirm the PCRA Court if Appellant fails any one of the four prongs. *See* Pagan, 950 A.2d at 292.

However, "[o]ur consideration of the after-discovered evidence offered by Appellant is tempered by the fact that recantation is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury." McCracken, 659 A.2d at 545 (citation omitted).  "'[A]n appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion.'" Id. (*quoting* Commonwealth v. Coleman, 264 A.2d 649, 651 (Pa. 1970)) (citations omitted). According to our Supreme Court:

> [T]he PCRA court, as fact-finder, 'is in a superior position to make the initial assessment of the importance of [the recantation] testimony to the outcome of the case,' and directed the PCRA court to 'render its own, independent findings of fact and conclusions of law concerning [the recanting person's] credibility and the impact, if any, upon the truth-determining process which can be discerned from such testimony.' [Williams, 732 A.2d] at 1181.  Thus, the after-discovered evidence cases tie the court's credibility determination to the governing prejudice standard.

<u>Johnson</u>, 966 A.2d at 542.  Thus, the PCRA court must assess the credibility of recantation testimony before determining whether the recantation would likely compel a different verdict under the after-discovered evidence test.  <u>Id.</u> at 541 (citing <u>D'Amato</u>, 856 A.2d at 825; <u>Commonwealth v. Dennis</u>, 715 A.2d 404, 416 (Pa. 1998); <u>Williams</u>, 732 A.2d at 1180-81) (internal citations and quotation marks omitted).

In this case, Appellant contends that a new trial is required because new evidence indicates that a prosecution witness testified falsely against him.  Appellant's Br. at 20.  Appellant's PCRA petition argued that it would be "unreasonable to conclude that [he] could control if ... and when Mr. Colon would come forward and tell the truth."  PCRA Petition at 17.  Mr. Colon visited Appellant, his brother, in prison in February 2015 and revealed for the first time that police officers and the Assistant District Attorney threatened to prosecute Mr. Colon as the ringleader in the conspiracy unless Mr. Colon testified against Appellant.  On February 6, 2015, Mr. Colon signed an affidavit admitting to "testifying falsely" due to the influence of ADA Pavloff, Officer Kelly Cruz and Trooper Alan S. Lohman.  <u>See</u>, Affidavit, supra.  Mr. Colon averred that the officials met with him, gave him food, and coached him to give false testimony in exchange for a more lenient sentence.  <u>See</u> <u>id</u>. at 1.  Thus, Appellant maintains that Mr. Colon "had a very powerful interest in currying favor with the prosecution" by perjuring his testimony at Appellant's trial.  <u>See</u> Appellant's Br. at 21.[5]

Appellant's arguments are not persuasive.  To accept Mr. Colon's current version of the facts would require the PCRA court to accept that he lied several times under oath before.[6] <u>See</u> PCRA Ct. Op., 7/21/2016, at 5-9.  However, Appellant offers no independent evidence to support Mr. Colon's current, contradictory and inconsistent version of the facts.  <u>See</u> PCRA Ct. Op. at 8 (observing that Mr. Colon's affidavit conceded his involvement in drug activity but expressly denied any involvement at the PCRA hearing).

Finally, as noted by the Commonwealth, "[t]here is no objective factor that would support giving any weight to [sic] Luis Colon's current recantation." Commonwealth's Br. at 39. Mr. Colon did not come forward until after the statute of limitations to prosecute him for perjury had tolled and his promise to testify truthfully provided in his probation agreement had expired. *See id.* at 40-41 (citing in support 18 Pa.C.S. § 4902).

For these reasons, we conclude that the PCRA court's credibility determination on the recantation testimony has ample support in the record, and we discern no abuse of the PCRA court's discretion. *See* <u>Loner</u>, 836 A.2d at 135; <u>McCracken</u>, 659 A.2d at 545. Accordingly, Appellant is not entitled to a new trial.

_____

**5.** Mr. Colon pleaded guilty to conspiring with other members of the "340 gang" to various crimes, including committing, attempting, or planning to deliver of cocaine and received a sentence of eleven and a half to twenty-three months with credit for 700 days, which resulted in immediate parole. *See* Appendix D, Guilty Plea Colloquy of Luis Colon, Commonwealth's Response to March 30, 2015 PCRA Petition, 5/27/2015. "A special condition of his probation and parole was Mr. Colon's continued cooperation, including truthful testimony, in Appellant's case." PCRA Ct. Op., 5/18/2016, at 8; *see* <u>Commonwealth v. Colon</u>, CP-15-CR-0002627-2004, CP-15-CR-0004043-2004, N.T., 8/27/07, at 6-8.

**6.** Colon testified at Appellant's trial on August 1, 2007. *See* N.T., 8/1/2007, 78-174. Appellant's trial counsel cross-examined Colon regarding his interactions with Trooper Kelly Cruz and Trooper Alan Lohman. *See* <u>id</u>. at 143-148. Moreover, Colon's testimony did not suggest that the officers improperly influenced his testimony; to the contrary, Colon said "I am telling the truth." *See* <u>id</u>. at 150-52. The Commonwealth provided various forms of Mr. Colon's past statements that were consistent with his trial testimony. *See* Exhibits C, D, and E, to the Commonwealth's Response to Appellant's March 30, 2015 PCRA Petition, 5/27/2015. Colon testified similarly at his

own guilty plea on December 19, 2005. <u>Commonwealth v. Colon</u>, CP-15-0002628-2004, CP-15-0004043-2004, N.T. 12/19/2005, at 3-6. Colon signed a guilty plea indicating that his plea was voluntary, free from any threats or promises inducing him to so plead. Guilty Plea Colloquy of Luis Colon, at 6, ¶¶ 17-18. Defense counsel for Appellant cross-examined Colon and questioned him about his interactions with Trooper Kelly Cruz and Trooper Alan Lohman. *See* N.T., 8/1/2007, 143-148. Colon resisted cross-examination designed to suggest an ulterior motive for his testimony and insistent that he was "telling the truth." *See* <u>id</u>. at 150-52. At Mr. Colon's sentencing, the court noted expressly that his testimony had been "quite credible." PCRA Ct. Op. at 8 (quoting Notes of Testimony, Sentencing of Luis Colon, 8/27/07, at 3).

<u>Commonwealth v. Lugo</u>, 1247 EDA 2016, at 7-12, 2017 WL 436490, at *3-*5 (footnotes in original).

For the foregoing reasons, Pennsylvania Courts correctly rejected Petitioner's claims based on Petitioner's co-defendant brother's recantation. Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## **GROUND 3. AT SENTENCING, THE TRIAL COURT CORRECTLY CONSIDERED THE EVIDENCE PRESENTED AT TRIAL AND REJECTED THE DISCREDITED RECANTATION AND UNRELIABLE HEARSAY ALLEGATIONS PUT FORTH BY PETITIONER.**

On July 25, 2017, at Petitioner's re-sentencing, current counsel sought to admit the hearsay statements of Petitioner's aunt and girlfriend concerning Petitioner's whereabouts between January 2003 and March 2004. Defense counsel sought to do so "for the purpose of calling into question the validity of the evidence the Court might rely on at sentencing", in other words, the testimony presented at trial:

> **MS. STRUM:**      Your Honor, the only additional evidence that I have not introduced before the hearing today, and actually I've introduced copies of this, I introduced in my sentencing memoranda, an Affidavit from Keila Rivera Relon that was emailed to me and an affidavit from Maria Lugo Maldonado that was emailed to me.   Subsequently I received the hard copies in the mail.  May I introduce those into evidence.

> **THE COURT:**      I don't know whether the DA will object to those as being hearsay or not.

> **MR. PIERCE:**      Your Honor, I have seen these affidavits before.  She has provided them before.  I am going to object for today's purposes because they are hearsay.

> **THE COURT:**      What is the defense's theory as how they are admissible?

> **MS. STRUM:**      Your Honor, the rules of evidence are more relaxed at sentence rather than trial.  It's my understanding the Court can consider hearsay at sentencings.

> **THE COURT:**      And what is it that they purport to say?

> **MS. STRUM:**      Ms. Keila Rivera Relon testifies under oath that from January 2003 to March 22, 2004, she had a relationship with Oscar Lugo and lived with him in the house of his Aunt Maria Lugo in Toa Alta Puerto Rico.

And the other sworn statement is from the Aunt Maria Lugo Maldonado which states under oath that she is the Aunt of Oscar Lugo, and that Oscar Lugo lived with her in her house in the address in Toa Alta, Puerto Rico between January 2003 until March 2004.  And as I've stated previously, it is not an alibi that there's no way Mr. Lugo could possibly be in any way involved in cocaine trafficking if he was living in Puerto Rico, but it is for the purpose of calling into question the validity of the evidence the Court might rely on at sentencing that Mr. Lugo was conditionally present in Kennett Square between 2001 and 2004 as Felix Reyes had testified at trial, distributing one kilogram to Felix Reyes every month.

So I'm asking that they be introduced for the purpose of calling into question the validity of the evidence that the Court might rely on at sentencing.

**THE COURT:**   Would you have me then during this proceeding make a determination that what is contained within the affidavit is true?

**MS. STRUM:**   Yes, your Honor.

**THE COURT:**   Objection's sustained.  It's rank hearsay, not subject to cross-examination.

(N.T. 07/25/2017, 34-36).

As with all evidence, the admission of evidence presented at a sentencing hearing is vested within the sound discretion of the trial court applying the rules of evidence.  Commonwealth v. Hairston, 624 Pa. 143, 173, 84 A.3d 657, 674 (2014). At the sentencing hearing, the trial court may admit evidence as to any matter that it deems relevant and admissible on the question of the sentence to be imposed, and the evidence shall include matters relating to any of the aggravating or

mitigating circumstances.  Commonwealth v. Young, 536 Pa. 57, 74-76, 637 A.2d 1313, 1321-1322 (1993).  Moreover, the fact finder must assess the credibility of such evidence, after the parties have the opportunity to challenge the veracity of the facts asserted and the credibility of the person asserting those facts, whether that person is a witness or the defendant.  Commonwealth v. Young, 536 Pa. 57, 75-76, 637 A.2d 1313, 1322 (1993).

Reversal based on the admission or exclusion of evidence requires a showing of an abuse of discretion, as well as a showing of actual prejudice. Commonwealth v. Franklin, 397 Pa. Super. 265, 580 A.2d 25 (1990); Commonwealth v. Wagner, 383 Pa. Super. 128, 556 A.2d 462 (1989).  "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."  Commonwealth v. Blood, 357 Pa. Super. 161, 165, 515 A.2d 611, 613 (1986).  The trial court may not, in its discretion, ignore a rule of evidence.  Commonwealth v. Franklin, 397 Pa. Super. 265, 580 A.2d 25 (1990); Commonwealth v. Wagner, 383 Pa. Super. 128, 134, 556 A.2d 462, 465 (1989) (Wieand, J., concurring).  It is not for an appellate court to usurp the function of the trial court to balance the alleged prejudicial effect of the evidence against its probative value.  Commonwealth v. O'Shea, 523 Pa. 384, 400,

567 A.2d 1023, 1030 (1989); Commonwealth v. Hernandez, 404 Pa. Super. 151, 160, 590 A.2d 325, 329 (1991).

Pa.R.E. 101 titled, "Scope; Adoption and Citation", provides in part: "(a) Scope. These rules of evidence govern proceedings in all courts of the Commonwealth of Pennsylvania's unified judicial system, except as otherwise provided by law."   Although the Comment to Pa.R.E. 101 states in part: "Traditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as ... sentencing hearings," a wholesale abrogation of the hearsay rule in the sentencing context is not permitted.  *See* Commonwealth v. Rhodes, 990 A.2d 732 (Pa. Super. 2009), *appeal denied*, 609 Pa. 688, 14 A.3d 827 (2010) (judgment of sentence vacated based upon consideration at sentencing of hearsay contained in police reports without the opportunity to cross-examine the witnesses whose hearsay statements comprised the reports, as reliance on unverified hearsay outside record is impermissible); Commonwealth v. Schwartz, 275 Pa. Super. 112, 418 A.2d 637 (Pa. Super. 1980) (reversing based upon hearsay information provided to sentencing court by police officers, who told the court that the defendant was known to frequently sell high volumes of drugs); Commonwealth v. Green, 525 Pa. 424, 581 A.2d 544 (1990) (error to permit a witness to testify at sentencing that an unnamed inmate accused the defendant of inciting other prisoners to take a hostage); Commonwealth v. Cruz, 265 Pa. Super. 474, 402 A.2d

536 (1979) (criticizing sentencing court's consideration of a detective's unsubstantiated hearsay statement that informants told him that the defendant was a major drug dealer, but noting that the hearsay objection had been waived); Commonwealth v. Karash, 306 Pa. Super. 229, 452 A.2d 528 (1982) (reversing based upon court in sentencing the defendant considered television and newspaper stories that after defendant's guilty plea, he had escaped, he had not yet been tried for or convicted of escape).

In some circumstances a sentencing court is permitted to rely upon hearsay evidence when it is substantiated, *i.e.*, if the hearsay originated from a dependable source under reliable circumstances. *See* Commonwealth v. Medley, 725 A.2d 1225 (Pa. Super. 1999), *appeal denied*, 561 Pa. 672, 749 A.2d 468 (1999) (defendant's prior record score established through hearsay proof that an out-of-state conviction increased that score due to the trustworthy nature of the proof).

Defense counsel sought to admit hearsay statements from Petitioner's aunt and girlfriend concerning his whereabouts between January 2003 and March 2004. These hearsay statements were not relevant and admissible on the question of the sentence to be imposed or to any aggravating or mitigating circumstances. These hearsay statements were an inappropriate collateral attack on the evidence presented at trial. These hearsay statements were not from dependable sources or made under reliable circumstances. Obviously, Petitioner's aunt and girlfriend are

**NOT** dependable sources, as they not neutral unbiased witnesses, and have an interest in the outcome of the case.  These hearsay statements were **NOT** made under reliable circumstances, as they made at a time when a motive to fabricate was present.  These hearsay statements were made specifically to assist Petitioner and were made years after the alleged events they describe.  The hearsay statement of Petitioner's aunt was dated July 18, 2017.  The hearsay statement of Petitioner's girlfriend was dated June 13, 2017.  (N.T. 07/25/2017, 37).

Defense counsel argued and argues that a Petitioner should not be sentenced based on factually inaccurate information or false assumptions.  However, no logical argument is put forth as to why hearsay statements from bias sources made under unreliable circumstances, and not subjected to cross-examination, should be considered more reliable than the jury's verdicts, which were found beyond a reasonable doubt, and based on evidence subjected to cross-examination.

Petitioner also argued on direct appeal that the evidence was insufficient for the same reason now offered.  Petitioner "suggests that during the relevant times periods when he was a suspect, he was living in Puerto Rico and Florida and could not have been involved in narcotics sales in Pennsylvania."  <u>Commonwealth v. Oscar Lugo</u>, 2215 EDA 2007, 6.  The Superior Court rejected this claim.  On direct appeal, the Superior Court found that there was more than sufficient evidence to sustain Petitioner's convictions.  *See* <u>Commonwealth v. Oscar Lugo</u>, 2215 EDA

2007, 5-18.

In his Pa.R.A.P. 1925 Opinion, the Honorable James P. MacElree, II,

addressed this claim in part as follows:

> In **claims two and six** Appellant claims that we erred at sentencing when we rejected Appellant's claim that the trial testimony of Felix Reyes and Luis Colon lacked reliability, and erred in imposing a sentence based on information "demonstrably false and unreliable." Appellant claims that the trial testimony of Felix Reyes, that he received a kilogram of cocaine from Appellant approximately once a week in 2003 and 2004, should not have been believed. Appellant also claims that the testimony of Commonwealth witness Luis Colon was false and unreliable, in that he had recanted his trial testimony, and that the recantation evidence is "more credible" than his trial testimony. Appellant goes on to argue that there was "no good reason" not to credit the sentencing hearing testimony of Appellant's brother Geraldo Colon, which testimony corroborated the testimony of Luis Colon at Appellant's PCRA hearing. We disagree, and first note that, prior to Appellant's resentencing, the Court had previously found that the recantation evidence offered by Luis Colon was not credible.
>
> On March 30, 2015, Appellant filed a PCRA petition claiming that his conviction was obtained by the false testimony of prosecution witness Luis Colon. Attached to the petition was the February 6, 2015, affidavit of Luis Colon, Appellant's half-brother, in which Mr. Colon stated that he was threatened by the police and coerced into giving false testimony against Appellant. At a PCRA hearing held on March 21, 2016, Mr. Colon testified that he lied under oath at Appellant's trial when he testified that he saw kilograms of cocaine at Appellant's business, and that he lied under oath at Appellant's trial when lie testified that he was present when 25-30 kilograms of cocaine were delivered to Appellant at his business. N.T. 3121/16, pp. 10-11. He testified that he lied under oath at Appellant's trial when he testified that he (Colon) distributed cocaine for Appellant. N.T. 3/21/16, p. 13. We denied

Appellant PCRA relief on this claim because we did not find
the recantation testimony of Luis Colon *in any way* credible.  In
his appeal of that decision, Appellant claimed that this Court
should have accepted Luis Colon's PCRA testimony that he
(Mr. Colon) was threatened and coerced by two Pennsylvania
State Troopers into falsely testifying that Appellant was the
leader of a large-scale cocaine operation.  Appellant specifically
claimed that his convictions were obtained through the use of
the perjured testimony of Luis Colon. The Superior Court
disagreed, affirmed our decision on this issue in its opinion of
February 1, 2017, and denied Appellant a new trial.

Further, as stated above, Appellant was resentenced because of
a change in the law and not because of a successful challenge to
his convictions.  It would have been improper to disregard the
verdict of the jury at Appellant's resentencing hearing,
especially after finding the recantation evidence incredible.  He
is entitled to no relief on these claims.

In **claim four**, Appellant claims that we erred in not
considering hearsay evidence at his sentencing. Appellant
argues that we erred in not considering the affidavits of Keila
Rivera Relon and Maria Lugo Maldonado, Appellant's
girlfriend and aunt respectively, in which both assert that
Appellant was actually living with them in Puerto Rico in 2003
and 2004, and thus, by implication, could not have been in
Pennsylvania committing crimes. *See*: N.T. 7/25/17, pp 34-38.
This evidence was rejected because the proceeding of July 25,
2017 was not a new trial on Appellant's charges, but rather a
resentencing hearing for those charges of which he had already
been convicted.  The affidavits offered were rank hearsay, were
not relevant to the proceedings, and were properly refused.

December 20, 2017 Opinion, the Honorable James P. MacElree, II, at 5-7.

On January 18, 2019, in <u>Commonwealth v. Oscar Lugo</u>, 2794 EDA 2017,

2019 WL 256503 (Text), 209 A.3d 514 (Table) (Pa. Super. 2019), the Superior

Court rejected this claim stating in part:

In his second claim, Lugo argues that the court relied on improper considerations, alleging it based his sentence on inaccurate information and false assumptions.  As such, his sentence is illegal.  Lugo contends that the trial court erred in refusing to admit hearsay statements of Lugo's aunt and girlfriend, which alleged Lugo was living in Puerto Rico between January 2003 and March 2004.  Lugo further argues that it was error for the trial court to accept Colon's original testimony and reject Colon's recantation testimony.  We find no error in the sentencing court's decision to disallow the hearsay statements or in finding Colon's original testimony credible while discrediting his subsequent recantation testimony.

First, we note that although Lugo frames his second issue as an illegal sentence claim, it is actually a challenge to the discretionary aspects of sentencing.  *See generally* Commonwealth v. Kerstetter, 580 A.2d 1134 (Pa. Super. 1990) (explaining claim that court relied on inaccurate information at sentencing implicates discretionary aspects of sentencing); *See also* Commonwealth v. Rhodes, 990 A.2d 732 (Pa. Super. 2009) (analyzing the appellant's improper considerations claims of erroneous information and false assumptions under a discretionary aspects of sentence framework).

Accordingly, Lugo is not entitled to a review of his discretionary sentencing questions as of right.  *See* Commonwealth v. Fiascki, 886 A.2d 261, 263 (Pa. Super. 2005).  "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal."  Commonwealth v. Buterbaugh, 91 A.3d 1247, 1265 (Pa. Super. 2014), *appeal denied*, 104 A.3d 1 (Pa. 2014).  "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence."  Id.  We conduct this four-part test to determine whether:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the

allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

Commonwealth v. Baker, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied*, 86 A.3d 231 (Pa. 2014).

Here, although he filed a 2119(f) statement, Lugo failed to include this claim in his concise statement of his reasons relied on for allowance of appeal. Because the Commonwealth has not objected to this oversight, we may consider these claims. *See* Commonwealth v. Bonds, 890 A.2d 414, 418 (Pa. Super. 2005) (stating that "In the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f)").

Regarding the testimony of his aunt and girlfriend, we observe that the admission of evidence presented at a sentencing hearing is vested within the sound discretion of the trial court applying the rules of evidence. Commonwealth v. Hairston, 84 A.3d 657, 674 (Pa. 2014). At the sentencing hearing, the trial court may admit evidence as to any matter that it deems relevant and admissible on the question of the sentence to be imposed, and the evidence shall include matters relating to any of the aggravating or mitigating circumstances. Commonwealth v. Young, 637 A.2d 1313, 1321-22 (Pa. 1993). "However, a proceeding held to determine [a] sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." Commonwealth v. Medley, 725 A.2d 1225, 1229 (Pa. Super. 1999). Moreover, the fact finder must assess the credibility of such evidence, after the parties have the opportunity to challenge the veracity of the facts asserted and the credibility of the person asserting those facts, whether that person is a witness or the defendant. Young, 637 A.2d at 1322. Finally, a sentencing court may rely on hearsay evidence if the hearsay originates from a dependable source under reliable circumstances. Medley, 725 A.2d at 1225.

Here, the circumstances were not reliable. As the Commonwealth points out, both Lugo's aunt and girlfriend had a personal interest in the outcome of the case, and as such were

not unbiased witnesses. *See* Commonwealth's Brief at 41. Furthermore, these hearsay statements only came to light years after the alleged events they described. Finally, because this hearsay testimony was in the form of sworn affidavits, the Commonwealth could not cross-examine the witnesses. For these reasons, we discern no abuse of the sentencing court's discretion in choosing not to admit these hearsay statements.

Similarly, we do not find that the trial court abused its discretion in accepting Colon's original testimony while discrediting his recantation testimony. It is well established that "recantation testimony is one of the least reliable forms of [evidence], particularly when it constitutes an admission of perjury." Commonwealth v. McCracken, 659 A.2d 541, 545 (Pa. 1998). This is the second time during the long history of this case that Lugo raises this argument. In its 1925(a) opinion, the trial court recounted the history of Lugo's argument that Colon's trial testimony lacked reliability:

> ... We [previously] denied [Lugo] PCRA relief on this claim because we did not find the recantation testimony of Luis Colon in any way credible. In his appeal of that decision [Lugo] claimed that this court should have accepted Luis Colon's PCRA testimony that he (Mr. Colon) was threatened and coerced by two Pennsylvania State Troopers into falsely testifying that [Lugo] was the leader of a large-scale cocaine operation. [Lugo] specifically claimed that his convictions were obtained through the use of the perjured testimony of Luis Colon. The Superior Court disagreed, affirmed our decision on this issue in its opinion of February 1, 2017, and denied [Lugo] a new trial.

> Further, as stated above, [Lugo] was resentenced because of a change in the law and not because of a successful challenge to his convictions. It would have been improper to disregard the verdict of the jury at [Lugo's] resentencing hearing, especially after finding his recantation evidence incredible. He is entitled to no relief on these claims.

Trial Court Opinion, 12/20/17, at 6.

> We agree with the trial court and find no reason to alter our
> previous decision on this matter.  Now, as before, we conclude
> that the trial court's credibility determination regarding the
> recantation testimony had ample support in the record, and we
> discern no abuse of the trial court's discretion.

<u>Commonwealth v. Lugo</u>, 2794 EDA 2017, at 8-12, 2019 WL 256503, at *4-*5 (Pa.
Super. 2019).

The admission of evidence presented at a sentencing hearing is vested within
the sound discretion of the trial court applying the rules of evidence.  The trial
court may admit evidence as to any matter that it deems relevant and admissible on
the question of the sentence to be imposed.  In some circumstances a sentencing
court is permitted to rely upon hearsay evidence when it is substantiated, *i.e.*, if the
hearsay originated from a dependable source under reliable circumstances.

Defense counsel sought to admit hearsay statements from Petitioner's aunt
and girlfriend concerning his whereabouts between January 2003 and March 2004.
These hearsay statements were not relevant and admissible on the question of the
sentence to be imposed, and were an inappropriate collateral attack on the evidence
presented at trial.  These hearsay statements were not from dependable sources or
made under reliable circumstances.  Defense counsel argues that a Petitioner
should not be sentenced based on factually inaccurate information or false
assumptions.  However, no logical argument is put forth as to why hearsay

statements from bias sources made under unreliable circumstances, and not subjected to cross-examination, should be considered more reliable than the jury's verdicts, which were found beyond a reasonable doubt, and based on evidence subjected to cross-examination.

For the foregoing reasons, Judge MacElree, at sentencing, correctly considered the evidence presented at trial and rejected the discredited recantation and unreliable hearsay allegations put forth by Petitioner.  Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

### GROUND 4.     THE     TRIAL     AND     SENTENCING COURT DID NOT EXHIBIT AN APPEARANCE OF BIAS AGAINST HISPANICS.

Petitioner alleges that the trial and sentencing court exhibited an appearance of bias against Hispanics.  Petitioner does not cite to anywhere in the record to support this claim or where this claim was specifically raised in state court.

On March 30, 2015, through current counsel, Petitioner filed a PCRA petition.  On April 13, 2015, Judge MacElree ordered the Commonwealth to file a Response.  On May 27, 2015, the Commonwealth filed a Response.  On June 3, 2015, Petitioner filed a Reply to the Commonwealth's Response.

On December 11, 2015, Judge MacElree issued a Notice of Intent to Dismiss the PCRA petition. On December 30, 2015, Petitioner filed a Response to the Notice of Intent to Dismiss the PCRA petition. On January 21, 2016, upon consideration of Petitioner's Response to the Notice of Intent to Dismiss the PCRA petition, Judge MacElree scheduled a PCRA hearing. On March 10, 2016, Petitioner filed a Motion for Recusal of Judge MacElree. On March 17, 2016, Judge MacElree denied the Motion for Recusal.

Petitioner argued that Judge MacElree should have recused himself because he initially issued a Notice of Intent to Dismiss the PCRA petition. Judge MacElree was the trial judge in the case at bar. Moreover, Judge MacElree was the judge for the recanting co-defendant's guilty plea and sentencing.

"Generally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice. It is only where it is shown that the interests of justice warrant recusal that a matter will be assigned to a different judge. Commonwealth v. Rashed, 496 Pa. 26, 436 A.2d 134 (1981)." Commonwealth v. Abu-Jamal, 553 Pa. 485, 510, 720 A.2d 79, 90 (1998).

Pa.R.Crim.P. 903, titled, Docketing and Assignment, provides in part: "(C) The trial judge, if available, shall proceed with and dispose of the petition in

accordance with these rules, unless the judge determines, in the interests of justice, that he or she should be disqualified."

In <u>Commonwealth v. Martorano</u>, 89 A.3d 301 (Pa. Super. 2014), the Superior Court stated in part:

> We acknowledge that "[g]enerally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice." <u>Commonwealth v. Abu–Jamal</u>, 553 Pa. 485, 510, 720 A.2d 79, 90 (1998).  Indeed, the Rules of Criminal Procedure govern PCRA proceedings.  *See*, *e.g.*, 42 Pa.C.S. § 9501 (providing that all post-trial matters relating to any criminal proceedings are governed by rules of criminal procedure); Pa.R.Crim.P. 903(A) (stating court should forward PCRA "petition and the criminal case file to the trial judge, if available, or to the administrative judge, if the trial judge is not available.").

<u>Martorano</u>, at 307.

Petitioner argued that Judge MacElree should have recused himself because he initially issued a Notice of Intent to Dismiss the PCRA petition.  However, upon consideration of Petitioner's Response to the Notice of Intent to Dismiss the PCRA petition, Judge MacElree changed his mind and scheduled a PCRA hearing. "Adverse rulings alone do not, however, establish the requisite bias warranting recusal, especially where the rulings are legally proper.  <u>Commonwealth v. Miller</u>, 541 Pa. 531, 664 A.2d 1310 (1995); <u>Travaglia</u>, 541 Pa. [108] at 137–139, 661 A.2d [352] at 367."  <u>Commonwealth v. Abu-Jamal</u>, 553 Pa. 485, 508, 720 A.2d 79, 90

(1998); <u>Commonwealth v. Birdsong</u>, 611 Pa. 203, 254, 24 A.3d 319, 350 (2011);

<u>Commonwealth v. Brown</u>, 141 A.3d 491, 498-499 (Pa. Super. 2016).

  In <u>Commonwealth v. White</u>, 557 Pa. 408, 734 A.2d 374 (1999), the Supreme

Court stated in pertinent part:

> The following relevant standards for recusal were recently set forth by this Court in <u>Commonwealth v. Abu-Jamal</u>, 553 Pa. 485, 720 A.2d 79 (1998):
>
>> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. <u>Rizzo v. Haines</u>, 520 Pa. 484, 512-513, 555 A.2d 58, 72 (1989); <u>Commonwealth v. Miller</u>, 541 Pa. 531, 664 A.2d 1310 (1995). As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. <u>Commonwealth v. Travaglia</u>, 541 Pa. at 143-145, 661 A.2d at 370, *citing* <u>Goodheart v. Casey</u>, 523 Pa. 188, 565 A.2d 757 (1989). In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. <u>Goodheart v. Casey</u>, 523 Pa. 188, 201-203, 565 A.2d 757, 764 (1989). Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion. <u>Id</u>. at 199-201, 565 A.2d at 763. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. <u>Reilly v. SEPTA</u>, 507 Pa. 204, 221-223, 489 A.2d 1291, 1300 (1985).

<u>Id</u>. at 507, 720 A.2d at 89.

<u>White</u> at 426, 734 A.2d at 383-384.

In <u>Commonwealth v. Darush</u>, 501 Pa. 15, 459 A.2d 727 (1983), the Supreme

Court stated in part:

> The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice or unfairness necessitating recusal.  <u>Commonwealth v. Perry</u>, 468 Pa. 515, 364 A.2d 312 (1976).  Furthermore, the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." <u>Commonwealth v. Kane</u>, 199 Pa. Super. 89, 91, 184 A.2d 405, 406 (1962).

> In general a "trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned."  <u>Commonwealth v. Goodman</u>, 454 Pa. 358, 361, 311 A.2d 652, 654 (1973) (quoting from A.B.A. Standards Relating to the Function of the Trial Judge § 17).

<u>Darush</u> at 21-22, 459 A.2d at 731-732.

In addressing this claim Judge MacElree stated in pertinent part:

> Appellant has filed a 1925(b) statement of matters complained of on appeal in which he raises three issues.  The first is that the Court erred when we denied his recusal motion prior to the March 21, 2016, PCRA hearing.  Appellant argues that, because the Court stated in our twenty day notice that it found Mr. Colon's recantation not credible, a reasonable person would conclude that the Court had "prejudged the case," and disqualification was mandated.

> Rule 2.11 (A) of the Code of Judicial Conduct states that a "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned

... "A judge who is requested to recuse himself must make an "independent self-analysis of the ability to be impartial." Commonwealth v. Timchak, 69 A.3d 765, 774 (Pa. Super. 2013). Judges are presumed to have the ability to determine whether they can rule impartially and without prejudice. Id. After this self-analysis, the judge must then decide whether his continued involvement in the case creates an appearance of impropriety. Id.

In support of this claim, Appellant cites to the case of In the Interest of McFall, 617 A.2d 707, 714 (Pa. 1992), where the Supreme Court stated that actual prejudice need not be established when the appearance of prejudice exists. However, the facts of McFall differ so significantly from the instant matter as to make it totally inapplicable. In McFall, a judge was recorded accepting a $300.00 gift from the Roofer's Union. After being confronted with this evidence, the judge agreed to cooperate with the F.B.I.'s investigation of other judges, including secretly recording conversations with them. In return, the F.B.I. agreed to disclose the judge's cooperation to Pennsylvania authorities should she later be prosecuted for accepting money from the Roofer's Union. The judge secretly cooperated with the F.B.I. for over nine months, while simultaneously presiding over criminal and juvenile cases. The Supreme Court, finding an appearance of impropriety, and an appearance of bias, stated that "the obvious conflict of interest eradicated the appearance of justice in [the judge's] courtroom. Id. at 713.

Instantly, after Appellant moved for recusal, the Court conducted the mandatory independent self-analysis, and determined that we could hear Appellant's PCRA matter fairly and impartially. We further found that our continued involvement created no appearance of impropriety. At issue was the Court's preliminary credibility determination that witness Luis Colon's recantation was not credible in light of the record and other evidence.

We note here that Pennsylvania Courts view recantation evidence as "exceedingly unreliable." Commonwealth v.

Coleman, 264 A.2d 649, 651 (Pa. 1970).   In fact, the Pennsylvania Supreme Court has stated that there is "no less reliable form of proof, especially when it involves an admission of perjury."   Id.   Nevertheless, we subsequently reconsidered our initial finding and scheduled an evidentiary hearing so that Appellant could present the live testimony of witness Luis Colon.   Thus, rather than prejudging the matter, the Court instead gave Appellant every opportunity to establish his case, and Mr. Colon every opportunity to establish his credibility. Neither succeeded.   The Court then rendered its credibility determination based on the facts, the record, the evidence offered and the live testimony of witness Colon.   Neither the Court's initial credibility determination, nor the fact that we found Luis Colon's live testimony and recantation incredible, entitles Appellant to any appellate relief.

July 21, 2016 Opinion of the Honorable James P. MacElree, II, 3-5.

On February 1, 2017, in Commonwealth v. Oscar Lugo, 1247 EDA 2016,

2017 WL 436490 (Text), 161 A.3d 366 (Table) (Pa. Super. 2017), the Superior

Court rejected this claim stating in part:

First, Appellant contends that the PCRA court abused its discretion in denying his motion for recusal.   See Appellant's Br. at 15–18.   According to Appellant, the court's 907 Notice expressed a "fixed opinion" regarding Colon's credibility.   Id. at 18.   Appellant maintains that "a reasonable person faced with the facts would conclude that the judge had prejudged matters of credibility and that recusal was required."   Id. at 17. Appellant alleges that Judge MacElree's subsequent decision to ignore Colon's "uncontradicted testimony" confirmed the bias suggested by the 907 Notice.   Id. at 18.

Our standard of review is as follows:

This Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether

they can rule impartially and without prejudice.
Commonwealth v. White, 734 A.2d 374, 384 (Pa. 1999).
The party who asserts a trial judge must be disqualified
bears the burden of producing evidence establishing bias,
prejudice, or unfairness necessitating recusal, and the
decision by a judge against whom a plea of prejudice is
made will not be disturbed except for an abuse of
discretion.

Commonwealth v. Whitmore, 912 A.2d 827, 834 (Pa. 2006)
(citation omitted).   "The mere fact that the trial judge
participated in earlier pretrial stages in the proceedings is not
alone sufficient grounds for recusal."   Commonwealth v.
Miller, 664 A.2d 1310, 1321 (Pa. 1995).  To the contrary, "in
general, it is preferable for the judge who presided at trial to
preside over any post-conviction proceedings because his or her
familiarity with the case will likely assist the proper
administration of justice."  Commonwealth v. Hutchinson, 25
A.3d 277, 319 (Pa. 2011); Commonwealth v. Abu–Jamal, 720
A.2d 79, 90 (Pa. 1998); see also Pa.R.Crim.P. 903(A), (C).  In
support of a motion for recusal, the moving party must produce
evidence that raises a "substantial doubt as to the jurist's ability
to preside impartially."  Abu–Jamal, 720 A.2d at 89.

Here, Appellant contends that the PCRA court's 907 Notice
indicated the PCRA judge's bias.   However, recantation
evidence "'is notoriously unreliable.'"   Commonwealth v.
D'Amato, 856 A.2d 806, 825 (Pa. 2004) (quoting
Commonwealth v. Dennis, 715 A.2d 404, 416 (Pa. 1998);
accord Commonwealth v. McCracken, 659 A.2d 541, 545 (Pa.
1995) (citation omitted)).  For this reason, Pennsylvania courts
"do not preclude the possibility that a credibility-based
dismissal of a petitioner's claims involving recantation might
be appropriate under some set of circumstances without the
necessity of an evidentiary hearing."   Commonwealth v.
Williams, 732 A.2d 1167, 1181 (Pa. 1999).

In this instance, the PCRA court found Appellant's response to
the 907 Notice persuasive, and granted him an evidentiary
hearing.  The court's subsequent, adverse ruling alone does not

establish the requisite bias warranting recusal, especially where that ruling was legally proper. <u>Abu–Jamal</u>, 720 A.2d at 90.  For these reasons, Appellant has failed to raise substantial doubt concerning Judge McElree's ability to rule impartially.[4]  Accordingly, we do not discern an abuse of Judge McElree's discretion in denying recusal. *See* <u>Whitmore</u>, 912 A.2d at 834.

_____

[4]      We are also assured by the PCRA court that it conducted the "mandatory independent self-analysis" in determining that it could hear this matter "fairly and impartially."  PCRA Ct. Op., 7/5/2015, at 5.

<u>Commonwealth v. Lugo</u>, 1247 EDA 2016, at 5-7, 2017 WL 436490, at *2-*3

(footnote in original).

For the foregoing reasons, Judge MacElree correctly denied Petitioner's motion for recusal.  Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.


IV.   <u>**CONCLUSION**</u>

Pennsylvania State Court proceedings did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Petitioner's claims are meritless.

WHEREFORE, the Respondent, respectfully requests this Honorable Court dismiss the Petition for Writ of Habeas Corpus.

Respectfully submitted,


July 12, 2020                              s/ Nicholas J. Casenta, Jr.
_____      _____
DATE                                      Nicholas J. Casenta, Jr., Esquire
                                               Attorney I.D. No. 43844
                                               Chief Deputy District Attorney
                                               District Attorney's Office
                                               Chester County Justice Center
                                               201 West Market Street, P.O. Box 2746
                                               West Chester, PA  19380-0989
                                               (610) 344-6801


**THIS DOCUMENT IS BEING ELECTRONICALLY FILED**

OSCAR LUGO,      : UNITED STATES DISTRICT COURT
    Petitioner

    VS.

SUPERINTENDENT     : EASTERN DISTRICT OF PENNSYLVANIA
COAL TOWNSHIP, et al.,

    AND

THE DISTRICT ATTORNEY OF  : CIVIL ACTION
CHESTER COUNTY,
    Respondents


          : NO. 20-2281

## <u>PROOF OF SERVICE</u>

   I hereby certify that I am serving a copy of this document upon the person

and in the manner indicated below.

## <u>SERVICE BY ELECTRONIC FILING</u>

Cheryl J. Sturm, Esquire
387 Ring Road
Chadds Ford, PA  19317
(484) 771-2000

July 12, 2020      s/ Nicholas J. Casenta, Jr.
_____  _____
DATE        Nicholas J. Casenta, Jr., Esquire
         Attorney I.D. No. 43844
         Chief Deputy District Attorney
         District Attorney's Office
         Chester County Justice Center
         201 West Market Street, P.O. Box 2746
         West Chester, PA  19380-0989
         (610) 344-6801

## INDEX OF APPENDICES

**APPENDIX "A"**     CP-15-CR-0002037-2004 Docket

**APPENDIX "B"**     CP-15-CR-0003873-2004 Docket

**APPENDIX "C"**     2215 EDA 2007 Docket

**APPENDIX "D"**     2216 EDA 2007 Docket

**APPENDIX "E"**     61 MM 2009 Docket

**APPENDIX "F"**     522 MAL 2009 Docket

**APPENDIX "G"**     3162 EDA 2012 Docket

**APPENDIX "H"**     688 MAL 2013 Docket

**APPENDIX "I"**     1247 EDA 2016 Docket

**APPENDIX "J"**     2794 EDA 2017 Docket

**APPENDIX "K"**     85 MAL 2019 Docket

**APPENDIX "L"**     3162 EDA 2012 Appellant Brief

                     3162 EDA 2012 Appellant Reproduced Record

**APPENDIX "M"**     3162 EDA 2012 Appellee Commonwealth Brief

**APPENDIX "N"**     3162 EDA 2012 Appellant Reply Brief

**APPENDIX "O"**     3162 EDA 2012 Superior Court Opinion

**APPENDIX "P"**     1247 EDA 2016 Appellant Brief

                     1247 EDA 2016 Appellant Reproduced Record

**APPENDIX "Q"**     1247 EDA 2016 Appellee Commonwealth Brief

**APPENDIX "R"**     1247 EDA 2016 Appellant Reply Brief

**APPENDIX "S"**     1247 EDA 2016 Superior Court Opinion

**APPENDIX "T"**     2794 EDA 2017 Appellant Brief

                     2794 EDA 2017 Appellant Reproduced Record 1

                     2794 EDA 2017 Appellant Reproduced Record 2

**APPENDIX "U"**     2794 EDA 2017 Appellee Commonwealth Brief

**APPENDIX "V"**     2794 EDA 2017 Appellant Reply Brief

**APPENDIX "W"**     2794 EDA 2017 Superior Court Opinion

**APPENDIX "X"**     PCRA Hearing Transcript - March 21, 2016

**APPENDIX "Y"**     Commonwealth Response to March 30, 2015 PCRA Petition